52 A.3d 53

**Joseph D. MILLER**

v.

**Amanda Lee MATHIAS.**

**No. 146, Sept. Term, 2008.**

Court of Appeals of Maryland.

Aug. 27, 2012.

420

Jonathan S. Shurberg (Jonathan S. Shurberg, P.C., Silver Spring, MD), on brief, for appellant.

Daniel L. Owel (Paradiso, Taub, Sinay & Owel, P.C., Bethesda, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, ADKINS and BARBERA, JJ.

BELL, C.J.

The appellant, Joseph D. Miller, in this case, presents three issues for review: whether the Circuit Court for Montgomery County erred in granting the Motion To Alter Or Amend, Or Alternatively To Revise Judgment, filed by the appellee, Amanda Lee Mathias, prior to when the answer was due, pursuant to Maryland Rule 2–311(b),[1] and, therefore, without first receiving and considering that answer during an in-person hearing pursuant to Maryland Rule 2–311(e),[2] whether the "inconvenient forum" provisions of Maryland Code (1984, 2006 Repl.Vol.), § 9.5–207 [3] of the Family Law Article apply to

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

1. Maryland Rule 2–311(b) provides:

"Except as otherwise provided in this section, a party against whom a motion is directed shall file any response within 15 days after being served with the motion, or within the time allowed for a party's original pleading pursuant to Rule 2–321(a), whichever is later. Unless the court orders otherwise, no response need be filed to a motion filed pursuant to Rule 1–204, 2–532, 2–533, or 2–534. If a party fails to file a response required by this section, the court may proceed to rule on the motion."

2. Maryland Rule 2–311(c) provides:

"When a motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the court shall determine in each case whether a hearing will be held, but it may not grant the motion without a hearing."

3. Maryland Code (1984, 2006 Repl.Vol.), § 9.5–207 of the Family Law Article provides:

"(a) *Action if this State is inconvenient forum.—*
"(1) A court of this State that has jurisdiction under this title to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.

a child custody case in which the court has acquired "continuing, exclusive jurisdiction" pursuant to § 9.5–202 [4] of the same article; and whether, if the inconvenient forum provisions are applicable, the Circuit Court properly applied them or abused its discretion in doing so. We shall affirm the judgment of the

---

"(2) The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

"(b) *Factors in determination.*—

"(1) Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another state to exercise jurisdiction.

"(2) For the purpose under paragraph (1) of this subsection, the court shall allow the parties to submit information and shall consider all relevant factors, including:

"(i) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

"(ii) the length of time the child has resided outside this State;

"(iii) the distance between the court in this State and the court in the state that would assume jurisdiction;

"(iv) the relative financial circumstances of the parties;

"(v) any agreement of the parties as to which state should assume jurisdiction;

"(vi) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

"(vii) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

"(viii) the familiarity of the court of each state with the facts and issues in the pending litigation."

4. That section provides:

"(a) *In general.*—Except as otherwise provided in § 9.5–204 of this subtitle, a court of this State that has made a child custody determination consistent with § 9.5–201 or § 9.5–203 of this subtitle has exclusive, continuing jurisdiction over the determination until:

"(1) a court of this State determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or

"(2) a court of this State or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State.

"(b) *Modification of custody determination.*—A court of this State that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 9.5–201 of this subtitle."

Circuit Court. First we reject the appellant's arguments based on Rule 2–311(b) and (e), and hold that the court was not required to hold a hearing prior to granting the appellee's motion seeking to revise the court's dismissal of her action, and, in any event, the appellant suffered no prejudice. We also hold that § 9.5–207 of the Family Law Article clearly and unambiguously contemplates that a party or a court, upon motion, will raise the issue of inconvenient forum, even when the jurisdiction of the court is continuing and exclusive, pursuant to § 9.5–202. Finally, we shall hold that the Circuit Court did not abuse its discretion when it found Maryland to be an inconvenient forum for the underlying child custody dispute and therefore relinquished its jurisdiction to Virginia.

## I. Background

The appellant and the appellee are the parents of a minor child, whose custody, legal and physical, they agreed to share. That joint custody agreement, contained in the Child Custody, Visitation And Child Support Agreement, executed when the parties both resided in Maryland, was incorporated, but not merged, into a Court Order of the Circuit Court and provided that "[t]he parties jointly agree that regardless of the precise number of hours each party shall have custody of the minor child as set forth herein, neither party shall be deemed to have primary residential custody of the minor child." Also addressed by the parties in that agreement was how future disputes arising under the agreement would be settled. Section III, entitled "Miscellaneous," article 5, a mediation clause, indicates that they opted for mediation as the preferred dispute resolution mechanism.[5] It provides:

---

**5.** Section I of the custody agreement also contains a mediation requirement. It provides, in the "parenting" context:

"*Legal Custody.* The parties shall have joint legal custody of the minor child and agree to mutually discuss and agree upon all major issues involving the child's health, education, religion, recreation, discipline and other matters of major significance concerning the minor child's life and welfare. If the parties are unable to reach a mutually satisfactory decision with respect to legal custody decisions,

"*Settlement of Future Disputes.* The parties recognize that disagreements may arise between them in the future, and they agree to attempt to settle these disagreements without court action to the fullest extent that may be possible. If the parties cannot resolve a controversy as to the modification, interpretation or alleged breach of this Agreement, they agree to first attempt to resolve the controversy in three (3) hours of mediation with mutually agreed upon mediator and to share equally the costs of the mediation. In the event they are unable to resolve the controversy through mediation, either party may apply to a court of competent jurisdiction for resolution of the issue."

Although when the agreement was signed, the parties both resided in Maryland, it was known and contemplated that the appellee would be moving to Virginia with her new husband. Now the appellant lives in Takoma Park, Maryland, while the appellee lives in Burke, Virginia, in Fairfax County, in northern Virginia.

For approximately two years, the circumstances of the parties remained unchanged. Thereafter, without first pursuing the mediation option, the appellee, who had, by then, moved to, and was living in, Virginia, filed, in the Juvenile and Domestic Relations Court of Fairfax County, Virginia, a Motion to Modify Custody. Concurrently, again without resorting to mediation, she filed, in the Circuit Court for Montgomery County, a Motion to Relinquish Jurisdiction to the Commonwealth of Virginia. In the Maryland motion, while

---

they hereby agree that they will submit such issues to mediation prior to seeking judicial intervention."

During the phone conference on August 6, it was clear that the parties disagreed on whether the mediation clause is triggered only upon disputes regarding legal custody decisions, or disputes in general. The appellee argued that she did not violate the mediation requirement, because she "ha[d] every intention to engage the services of the mediator prior to a trial being set in the [modification of the custody order] matter[,]" and thus her filing a motion to relinquish jurisdiction was not premature or in contravention of the custody agreement and order, as the appellant argued. The Circuit Court accepted the appellee's argument.

acknowledging that, pursuant to 28 U.S.C. § 1738(A)(f), the Parental Kidnapping Prevention Act, and § 9.5–202, the Circuit Court, because it made the initial custody determination and the appellant continues to reside in the State, had "exclusive, continuing jurisdiction," the appellee averred that the court could relinquish such jurisdiction "if it finds that it is an inconvenient forum," offering a number of reasons why she believed the court to be an inconvenient forum.[6] Specifically, the appellee averred:

"I. The nature and location of much of the evidence required to resolve the pending litigation is in the Commonwealth of Virginia, first and foremost, the child's school, health care professionals and church.

"J. The Plaintiff and the minor child have been attending a 21–week program in Fairfax County called 'Nurturing Parenting,' and the social workers associated with the program are expected to be witnesses in the custody action between the parties.

"K. Therefore, most of the witnesses essential in a custody and visitation proceeding such as teachers, doctors, therapists and coaches, are all in Virginia. It would be unduly burdensome for these witnesses to have to travel to Maryland to testify and unnecessarily costly for the Plaintiff to have to compensate professional witnesses for their time and their travel.

"L. The balance of hardships in terms of witnesses and evidence weighs heavily in favor of the Plaintiff."

The appellant responded to both actions.[7] The unifying theme of the motion he filed in the Virginia action to dismiss

---

**6.** The appellee referenced § 9.5–202 in support of the inconvenient forum proposition. She undoubtedly meant § 9.5–207, which lists the factors, some of which are reflected in the appellee's submission and allegations, to be considered when assessing the relative convenience of the potential fora.

**7.** The appellant's response to the Maryland action was filed late, after the appellee had moved for judgment by default for failure to answer. Although, in her Motion To Alter Or Amend, Or Alternatively To Revise

on jurisdictional grounds and the Opposition To Motion To Relinquish Jurisdiction To The Commonwealth Of Virginia, Or In The Alternative, Motion For Stay Of Proceedings, filed in the Circuit Court, was the allegation that the Maryland court had, and retained, "exclusive, continuing jurisdiction" of their child custody matter. As indicated, the appellee did not dispute this fact. The appellant, however, rejected the applicability of the inconvenient forum provision to that situation, where the custody decision has been made by the court which retains "exclusive, continuing jurisdiction." Interpreting § 9.5–207 as being applicable only "in the circumstances of an initial custody determination, not a motion to modify a prior determination," he argued:

> "The issue is not whether the Court should 'make a child custody determination,' that was done in July 2006, by consent. Rather, the issue is whether the Court has 'exclusive, continuing jurisdiction' pursuant to § 9.5–202—Plaintiff freely acknowledges that this Court does have such jurisdiction, and that is and should be the end of this Court's inquiry. It makes a mockery of the term 'exclusive, continuing jurisdiction' to argue that such jurisdiction is neither exclusive nor continuing, yet that is precisely what the Plaintiff argues."

The Circuit Court, upon consideration of the appellee's motion, the appellant's opposition and the entire court record, and without a hearing, denied the appellee's Motion to Relinquish. On the same day, the Virginia Court "denied [the appellant's motion to dismiss] without prejudice at this time," stayed the proceedings and "Adjudged, Ordered and Decreed . . ."

> "1. As soon as a judge is appointed in the [appellee's] Motion to Relinquish Jurisdiction to Virginia, currently pending in the Montgomery County Circuit Court in Mont-

---

Judgment, *see infra,* she alleged this lateness, the court's subsequent resolution of the jurisdictional issue—it denied the appellee's motion—and subsequent events—on the record telephonic communications between the judges and the order reflecting their decision—rendered this point moot. It is not before us for review, therefore.

gomery County, Maryland, case number 52467–FL, counsel for [the appellee] shall immediately notify [the appellant's] counsel.

"2. The Honorable David S. Schell shall communicate with the presiding judge in Maryland on the question of jurisdiction pursuant to § 20–143.17 [8] and § 20–146.9 [9] of the

8. Va.Code. Ann. § 20–143.17 (2008) corresponds with Section 206 of the Uniform Child Custody Jurisdiction and Enforcement Act (1997) (UCCJEA). That section provides:
"SIMULTANEOUS PROCEEDINGS.
"(a) Except as otherwise provided in Section 204, a court of this State may not exercise its jurisdiction under this [article] if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another State having jurisdiction substantially in conformity with this [Act], unless the proceeding has been terminated or is stayed by the court of the other State because a court of this State is a more convenient forum under Section 207.
"(b) Except as otherwise provided in Section 204, a court of this State, before hearing a child-custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to Section 209. *If the court determines that a child-custody proceeding has been commenced in a court in another State having jurisdiction substantially in accordance with this [Act], the court of this State shall stay its proceeding and communicate with the court of the other State.* If the court of the State having jurisdiction substantially in accordance with this [Act] does not determine that the court of this State is a more appropriate forum, the court of this State shall dismiss the proceeding.
"(c) In a proceeding to modify a child-custody determination, a court of this State shall determine whether a proceeding to enforce the determination has been commenced in another State. If a proceeding to enforce a child-custody determination has been commenced in another State, the court may:
"(1) stay the proceeding for modification pending the entry of an order of a court of the other State enforcing, staying, denying, or dismissing the proceeding for enforcement;
"(2) enjoin the parties from continuing with the proceeding for enforcement; or
"(3) proceed with the modification under conditions it considers appropriate."
(Emphasis added). Maryland's version of UCCJEA § 206 is § 9.5–206.

9. Va.Code. Ann. § 20–146.9 (2008) corresponds with Section 110 of the UCCJEA, which states:
"COMMUNICATION BETWEEN COURTS.
"(a) A court of this State may communicate with a court in another State concerning a proceeding arising under this [Act].

Code of Virginia, 1950, as amended. Counsel shall set up a conference call between Judge Schell and the Maryland Judge. All parties shall be present at the communication and a record of said communication shall be made. Said communication shall take place via conference call, with Judge Schell appearing via telephone from Virginia."

On August 1, 2008, 16 days after the Circuit Court entered its order denying her motion to relinquish jurisdiction, the appellee filed in that court a "Motion to Alter or Amend, or Alternatively to Revise Judgment." In that motion, citing § 9.5–206(b)(2),[10] as consistent, she referenced, and attached, the initial Virginia Court Order, as well as the Order issued

---

"(b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

"(c) Communication between courts on schedules, calendars, court records, and similar matters may occur without informing the parties. A record need not be made of the communication.

"(d) Except as otherwise provided in subsection (c), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.

"(e) For the purposes of this section, 'record' means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form."

Maryland also has adopted UCCJEA § 110. The equivalent Maryland statute is § 9.5–109.

10. Fam. Law Art. § 9.5–206(b)(2), is Maryland's version of the applicable section of the UCCJEA. It provides:

"(b) Inquiry before hearing as to proceeding in other state.—(1) Except as otherwise provided in § 9.5–204 of this subtitle, a court of this State, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties under § 9.5–209 of this subtitle.

"(2) If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this title, the court of this State shall stay its proceeding and communicate with the court of the other state.

"(3) If the court of the state having jurisdiction substantially in accordance with this title does not determine that the court of this State is a more appropriate forum, the court of this State shall dismiss the proceeding."

subsequently by the next judge assigned to the case, which indicated that

"Both counsel . . . agree that the Courts in Maryland and Virginia have not communicated per the requirements of UCCJEA. The Court will set two status hearings (8-6-08 9:30 A.M. and 9-22-08 11:40 A.M.) and counsel shall coordinate with Maryland to allow the two Courts to resolve jurisdiction."

For those reasons, the appellee

"Request[ed] that the Court vacate its July 15, 2008 Order and allow this matter to proceed in accordance with the Orders issued by the Virginia Court; that is, that a telephone conference take place and that Judges from the respective Courts communicate with each other, with the parties and counsel participating, to determine where jurisdiction and venue are appropriate."

The communication between the Maryland and Virginia courts occurred in the form of a telephone conference call hearing, initiated in Virginia and lasting approximately 20 minutes. In addition to Judge Ann Harrington of the Circuit Court and Judge Gayle B. Carr of the Juvenile and Domestic Court of Virginia, also present on the call were a sworn court reporter and both of the parties' attorneys. Both the appellant and the appellee had Virginia counsel for the Virginia action and Maryland counsel for the Maryland action. It was Virginia counsel who appeared with and participated in the telephone conference call hearing.

At the outset of the phone conference, the judges addressed its nature and purpose:

"Judge Carr: As I understand, we had competing petitions for custody filed in both courts. And I know the parties have been here before on several motions which I really wasn't involved in, other than the last hearing where counsel for the father represented that Maryland had already declined the mother's petition to allow Virginia to have jurisdiction. And as I understood, the two courts

had not had a chance to talk about that. So that was the reason we set up this hearing.

"Judge Harrington: Yes, that is correct. And I believe our ruling on that was probably premature, but it was based on the objection that was filed. We don't have a motion to modify access or custody files in this court. What we have filed was the request to relinquish jurisdiction.

"Judge Carr: Okay, yes.

"Judge Harrington: And then an opposition to that.

"Judge Carr: Okay. Well, I guess she filed—the mother filed for custody here on May 20th, 2008, to modify. And then I guess she filed in Maryland to ask Maryland to relinquish jurisdiction.

"Judge Harrington: Yes. That was opposed by the father.

"Judge Carr: So I guess the purpose of today's hearing is for us to decide which court should assume jurisdiction. And did you want to hear any arguments from counsel? I have reviewed my pleadings, and they sort of argued the case a little bit before me at the last hearing. But I know you have not had an opportunity to hear from counsel.

"Judge Harrington: I'd be delighted to hear from counsel."

Counsel for the appellee began, submitting that whether a particular court has exclusive, continuing jurisdiction of a case "is kind of a red herring because anybody can petition the court that has exclusive, continuing jurisdiction to relinquish that, if that court determines that another court is the more appropriate forum." The appellee thus argued, consistent with her Motion to Relinquish Jurisdiction, that the crucial witnesses in this custody modification proceeding are in Virginia and that, particularly in the case of professional witnesses, requiring them to go to Maryland to testify would be a hardship. She also identified the professional witnesses to whom she referred: the child's pediatrician and pediatric dentist, a licensed clinical social worker, and two preschool teachers. The appellee concluded:

"It is our position that, with respect to the lay witnesses, they're probably about both equal, the father being in

Takoma Park, Maryland, mom's witnesses being in Northern Virginia. But I think the balance of the hardship weighs in favor of having the proceeding where the professional witnesses, at a location, and the court, at a location which is closer to their offices. And that would be here in Virginia."

The appellant, through counsel, rejoined that Maryland, not Virginia, was the appropriate jurisdiction and venue, noting, in agreement with the appellee, that it had the exclusive, continuing jurisdiction over the child custody matter. He argued, in any event, that Maryland was not an inconvenient forum. Noting the absence of "allegations or issues concerning the child's health [or] mental health," he submitted that the Virginia witnesses could be "deposed in Virginia and their testimony offered or for audio-visual means to be set up or for them to testify by telephone." The appellant also indicated that for "all the witnesses that mom has in Virginia, dad, too, has professional witnesses over in Maryland, as well, because he has—there's doctors and pediatricians that the child sees in Maryland." Although he was asked by the court to do so, the appellant did not identify the professional witnesses to which he had referred.[11]

---

**11.** Rather than identify the professional witnesses who would testify on his behalf, the appellant raised another issue. To the question, "Is dad planning to call professional witnesses?," the appellant responded:

"Your Honor, at this point, what dad's trying to do is file the order with respect to what the parties agreed to. If there's any problems, that they're going to mediate this cause."

His later attempt to answer the question provided no greater clarity:
"To answer your question, your Honor, we're trying to resolve this through mediation. That is what we're trying to do. We've not received any response from mom to that effect.

"So that's why we do feel that the litigation is premature, and we argued that both in our motion to dismiss the case here in Virginia, and I know that [the appellant's Maryland counsel] also argued that in his opposition motion to mom's motion to transfer the jurisdiction to Virginia."

The appellee did not dispute that the parties had agreed to mediate their disputes prior to litigation. She maintained, however, that their agreement did not preclude the filing of a court action; it simply

Judge Harrington relinquished the jurisdiction of the Circuit Court for Montgomery County to Virginia. She reasoned:

> "The parties litigated in Maryland. They came to an agreement. They reached a custody decision that basically shared time with their child who is, I think, four years old now 50–50.

> "Dad lives in Takoma Park, Maryland. Mom lives in Burke, Virginia.

> "Each of those locations, I think its about 45 minutes to the Rockville courthouse. So in terms of access, I was thinking that Rockville is probably equally inconvenient to both of them.

> "And the factors that make traveling inconvenient for one side are exactly the same as the factors that make traveling inconvenient for the other side.

> "On the other hand, dad acknowledges in his pleadings in Maryland that it was contemplated that mom was going to move to Virginia because she had remarried and she was relocating there with her husband. So this did not come as a surprise to the parties. That was apparently in the works when they reached this agreement.

> "So I think it's really a question of both cases, I mean, both jurisdictions being almost equally poised to do this. And what puts me over the top in coming to a decision that it would be appropriate to relinquish jurisdiction is, I do think that mom has lined up professional witnesses and they're more concrete than what dad has proposed.

> "And I do think it's important to consider the convenience of the professionals, their schedule, their time and their ability to appear because what they present may or may not be significant in this case if the parties can't settle it ahead of time and it certainly will be if it goes to trial.

---

precluded the pursuit of that action until after the parties have tried mediation.

"So I'm persuaded that it is appropriate to relinquish jurisdiction and allow the matter to proceed in Virginia where it's been filed."

In implementation of that decision, Judge Harrington issued two orders, one granting the appellee's Motion to Alter or Amend or Alternatively to Revise Judgment and vacating the court's earlier denial of the appellee's Motion to Relinquish Jurisdiction to the Commonwealth of Virginia and the other relinquishing jurisdiction to Virginia. The petitioner thereafter filed a Motion to Alter or Amend and Motion to Vacate or Stay Order of August 25, 2008. In support of those motions, he advanced, among other arguments,[12] that the appellee's motion to alter or amend was ruled on prior to the expiration of the time given him by the Rules to answer and was granted without a hearing, in contravention of the Rules and "reiterated the argument that the 'inconvenient forum' provisions of § 9.5–207 do not apply where Maryland, as is admittedly the case here ... has 'exclusive, continuing jurisdiction' pursuant to § 9.5–202." Alternatively, pursuant to Md. Rule 2–632, the appellant sought a stay of the Circuit Court's order, pending appeal. The appellee filed an Opposition to the Motion to Alter or Amend.

When the appellant's motions were denied, he filed a Notice of Appeal in the Court of Special Appeals. While the case was pending in that court, this Court, on its own motion, granted

**12.** The appellant made a number of arguments and identified procedural flaws that he does not pursue on appeal: that the appellee was given relief—the relinquishment of jurisdiction—that she did not request in her motion to alter or amend; that the consultation with Virginia was done without providing the appellant's Maryland attorney, his principal counsel on the relinquishment of jurisdiction issue, with notice and an opportunity to be heard on that issue; that the vacation of the court's prior order denying the appellee's motion that it relinquish jurisdiction was on a basis not argued by the appellee and on the basis of facts not in the record or supported by affidavit; that the appellee never requested that the court's prior order be vacated; that the appellee "duped" the court with regard to the witnesses that needed to be, and would be, called; that the appellee proceeded prematurely since "the parties' agreement, encompassed in the Court's July 21, 2006 order, requires the parties to mediate any disputes before court action is taken."

**438**

certiorari. The appellant argues in this Court that the Circuit Court erred: in granting the appellee's motion to alter or amend without allowing the appellant to respond and without holding a hearing, in violation of Maryland Rule 2–311(b) and (e); in conducting an "inconvenient forum" analysis when it was the State with "continuing, exclusive" jurisdiction; and, assuming the "inconvenient forum" analysis were appropriate, in relinquishing jurisdiction.

## II. Motion To Alter or Amend—Rule 2–311(b) and (e) Requirements

"In general, the denial of a motion to alter or amend a judgment or for reconsideration is reviewed by appellate courts for abuse of discretion." *RRC Northeast, LLC v. BAA Maryland, Inc.,* 413 Md. 638, 673, 994 A.2d 430, 451 (2010) (quoting *Wilson–X v. Dep't of Human Res.,* 403 Md. 667, 674–75, 944 A.2d 509, 514 (2008)). We have also noted that, when reviewing a trial judge's discretionary rulings, "[t]his Court has recognized that trial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature." *Id.* at 675, 944 A.2d at 515. *See also Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 433, 914 A.2d 113, 130 (2007) (holding that "a failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion"); *Ehrlich v. Perez,* 394 Md. 691, 708, 908 A.2d 1220, 1230 (2006), citing *LeJeune v. Coin Acceptors, Inc.,* 381 Md. 288, 301, 849 A.2d 451, 459 (2004) and *Alston v. Alston,* 331 Md. 496, 504, 629 A.2d 70, 74 (1993) (stating that, "even with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards"). In summation, "[t]he relevance of an asserted legal error, of substantive law, procedural requirements, or fact-finding unsupported by substantial evidence, lies in whether there has been such an abuse." *Wilson–X,* 403 Md. at 675–76, 944 A.2d at 514.

The appellant argues that the Circuit Court abused its discretion when it granted the appellee's motion to alter or amend without a hearing and without having given him an

opportunity to respond to the motion. He relies on Maryland Rule 2–311, two sections of which, he submits,[13] are applicable and when applied, mandate a result contrary to the one reached by the Circuit Court. With regard to the denial of his opportunity to respond, the appellant points out that, while the Rule prescribes a longer time for answering a motion, the consultation between the Maryland and Virginia judges occurred within 6 days of the filing of the motion to alter or amend, and the motion itself was granted prior to the expiration of the time prescribed by the Rule for filing an answer. Significant, even critical, to the hearing prong of his argument is that the motion to alter or amend judgment was a Rule 2–534 motion, that is, one filed pursuant to that Rule. This Court has held that, in the case of a Rule 2–534 motion, the hearing requirement of Rule 2–311(e) is mandatory. *See Renbaum v. Custom Holding, Inc.*, 386 Md. 28, 46, 871 A.2d 554, 564–65 (2005) ("[t]he responding party must have an opportunity to address the merits of the Rule 2–534 motion (and the request to receive additional evidence)") (citing Paul V. Niemeyer et al., *Maryland Rules Commentary* 456 (3rd ed.2003)) (stating that before a court may grant a Rule 2–534 motion, a hearing must be held in accordance with Rule 2–311(e)).

The appellant is correct, Rule 2–311 does prescribe the time that the opponent of a motion has to respond to that motion and when a hearing is required to resolve that motion. Section (b), which addresses the former point, provides:

> "Except as otherwise provided in this section, a party against whom a motion is directed shall file any response within 15 days after being served with the motion, or within the time allowed for a party's original pleading pursuant to Rule 2–321(a), whichever is later. Unless the court orders otherwise, no response need be filed to a motion filed pursuant to Rule 2–532, 2–533, or 2–534. If a party fails to

---

**13.** There actually are three sections, we submit, that are relevant. Section (f) of the Rule treats when hearings are required in the case of the post trial motions permitted but not mentioned in section (e).

file a response required by this section, the court may proceed to rule on the motion."

Sections (e) and (f) pertain to the latter, hearings on motions. Certain post trial motions are the subject of Rule 2–311(e)'s hearing requirements, while Rule 2–311(f) treats hearings on the other motions that are not addressed in section (e). They provide:

"(e) When a motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the court shall determine in each case whether a hearing will be held, but it may not grant the motion without a hearing.

"(f) Hearing—Other motions. A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall request the hearing in the motion or response under the heading 'Request for Hearing.' The title of the motion or response shall state that a hearing is requested. Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but the court may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section."

Referenced in each of the aforementioned relevant sections of Rule 2–311 are post trial motions "filed pursuant to Rule 2–532, 2–533, or 2–534." Only in the case of a motion filed pursuant to Rule 2–534,[14] however, as Rule 2–311(e) makes clear, is a hearing required before the motion can be granted.

---

**14.** Maryland Rule 2–534. *Motion to alter or amend a judgment*—Court decision

In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial. A motion to alter or amend a judgment filed after the announcement or signing by the trial court of a judgment but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

According to—as defined by—the Rule, a Rule 2–534 motion, a motion filed pursuant to Rule 2–534, is one seeking revision of the judgment—its alteration or amendment—that is filed "[i]n an action decided by the court" and "within ten days after entry of judgment." Rule 2–535 is another rule that implicates the revisory power of the court. Indeed, as we shall see, it overlaps with Rule 2–534, when "the action was tried before the court." It provides:

> "*Revisory power*—(a) Generally. On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534. A motion filed after the announcement or signing by the trial court of a judgment or the return of a verdict but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket."

Unlike Rule 2–534, Rule 2–535 is not specifically referenced in Rule 2–311 and, thus, even though it too addresses the court's revisory power, permitting the court to "take any action that it could have taken under Rule 2–534," a motion pursuant to it does not require a hearing to be granted. Nor are motions filed pursuant to Rule 2–535 limited to actions decided by the court and filed within ten days after entry of judgment.

The record reflects that the appellee filed her motion to alter or amend the Circuit Court judgment in response to the Circuit Court's ruling denying her motion asking it to relinquish its jurisdiction to Virginia. That ruling was filed on July 15, 2008. The appellee's motion was filed on August 1, or 16 days after entry of the judgment sought to be revised. Thus, although styled as a motion to alter or amend and filed "in an action decided by the court," it was not filed "within ten days after the entry of judgment." Accordingly, the motion was not filed pursuant to Rule 2–534; rather it was filed pursuant to Rule 2–535. It follows, therefore, that the requirement prescribed by Rule 2–311(e), that the motion not be

**442**

granted without a hearing, does not apply.[15] Rather, the

---

**15.** To be sure, as we have long recognized, *see Office of People's Counsel v. Advance Mobilehome Corp.,* 75 Md.App. 39, 45 n. 6, 540 A.2d 151, 154 n. 6, *cert. denied,* 313 Md. 30, 542 A.2d 857 (1988) (citing *Unnamed Attorney v. Attorney Griev. Comm'n,* 303 Md. 473, 486, 494 A.2d 940, 946 (1985) and *Young v. Young,* 61 Md.App. 103, 484 A.2d 1054 (1984)), a motion filed pursuant to Rule 2–534 and one filed pursuant to Rule 2–535 deal with the same subject matter and seek the same or similar relief. They both seek a change in the judgment, entered by the court, to which they relate—the Rule 2–534 motion seeks alteration or amendment in some particular, while the Rule 2–535 motion would revise the judgment in some way. Therefore, consistent with the canons of statutory construction, applicable fully to the interpretation of Rules, *Hurst v. State,* 400 Md. 397, 417, 929 A.2d 157, 168 (2007), "where two statutes purport to deal with the same subject matter, they must be construed together as if they were not inconsistent with one another ... In this regard, the courts strongly favor a harmonious interpretation ..." *Taxiera v. Malkus,* 320 Md. 471, 481, 578 A.2d 761, 765 (1990) (internal citations omitted); *Serio v. Baltimore County,* 384 Md. 373, 390, 863 A.2d 952, 962 (2004); *Drew v. First Guar. Mortgage Corp.,* 379 Md. 318, 327, 842 A.2d 1, 6 (2003); *Bowen v. City of Annapolis,* 402 Md. 587, 613–14, 937 A.2d 242, 258 (2007); *Magnetti v. Univ. of Md.,* 402 Md. 548, 565, 937 A.2d 219, 229 (2007); *Clipper Windpower, Inc. v. Sprenger,* 399 Md. 539, 554, 924 A.2d 1160, 1168 (2007).

Accordingly, we have held that "a Rule 2–535 motion, if filed within 10 days of the entry of judgment by the court, will be treated as a Rule 2–534 motion and have the same effect on appeal time." *Alitalia v. Tornillo,* 320 Md. 192, 200, 577 A.2d 34, 38 (1990) (citing *Unnamed Attorney,* 303 Md. at 486, 494 A.2d at 946; *Sieck v. Sieck,* 66 Md.App. 37, 42–44, 502 A.2d 528, 531–532 (1986); Committee Note to Rule 8–202(c); *B & K Rentals v. Universal Leaf,* 319 Md. 127, 132, 571 A.2d 1213, 1215–1216 (1990); *Yarema v. Exxon Corp.,* 305 Md. 219, 241 n. 19, 503 A.2d 239, 250 n. 19 (1986)). This is consistent with that provision of Rule 2–535 that instructs, "if the action was tried before the court, [the court] may take any action that it could have taken under Rule 2–534," and with the well-settled proposition that it is the substance of the motion, not its form or caption, that is dispositive of its nature:

"[u]nder Maryland law, when motions and other pleadings are considered by a trial judge, it is the substance of the pleading that governs its outcome, and not its *form.* In other words, the nature of a motion is determined by the relief it seeks and not by its label or caption."

*Hill v. Hill,* 118 Md.App. 36, 44, 701 A.2d 1170, 1174 (1997), *cert. denied,* 349 Md. 103, 707 A.2d 89 (1998) (citing *Alitalia,* 320 Md. at 195–96, 577 A.2d 34, 36 (1990); *Gluckstern v. Sutton,* 319 Md. 634, 650–51, 574 A.2d 898 (1990); *State v. Hogg,* 311 Md. 446, 457, 535 A.2d 923 (1988); *Higgins v. Barnes,* 310 Md. 532, 536 n. 1, 530 A.2d 724, 726 n. 1 (1987) ("Our concern is with the nature of the *issues* legiti-

Maryland rule addressing "other motions," Rule 2–311(f), mandates a hearing only if a party requests one and if the court "render[s] a decision that is dispositive of a claim or defense." Here, the appellant did not comply with Rule 2–311(f); he never requested a hearing for the motion to alter or amend. Accordingly, Rule 2–311(f) simply does not assist him.

The appellant also asserts that his time to respond to the appellee's motion to alter or amend was cut short by the Circuit Court's phone conference and subsequent ruling. The appellant is correct, without regard to the time provided to answer the motion and without there being an order shortening time to answer, the Circuit Court consulted with the Virginia court, signed the order granting the appellee's motion to alter or amend and filed that order, all before the time for the appellant's answer had expired.[16] Nevertheless, he is not

---

mately raised in the pleadings, and not with the labels given to the pleadings")).

In *Hill*, the appellant's motion, though labeled as a motion to modify the child support order, was construed as a motion to alter or amend, as it was filed four days after the judgment, without putting forth any new arguments or presenting any additional facts. 118 Md.App. at 43, 701 A.2d at 1173–74.

That the two motions serve the same purpose from the perspective of the appellate process, they both are substitutes for appeal, or the moving party's last attempt to win in the trial court, instead of the Court of Special Appeals, *Alitalia* at 198–99, 577 A.2d at 38 (citing P. Niemeyer & L. Richards, *Maryland Rules Commentary* 324 (1984)), does not make them interchangeable for all purposes and, in particular, within the meaning of Rule 2–311(e)'s hearing requirement. To hold otherwise would render Rule 2–535 largely nugatory notwithstanding that each of the rules has an element that the other does not, the time in which the motion must be filed is different.

**16.** The appellee submits that, in any event, the August 6 conference call was a proper substitute for a Rule 2–311(e) hearing. We do not agree with this view.

It is true, of course, that this Court has not narrowly defined "hearing" to mean only an in-person appearance in court. In *Alitalia*, 320 Md. at 199, 577 A.2d at 38, we said:

"No violence is done to the meaning of 'hearing' by reading it as extending to something other than an oral presentation before the tribunal. We have recognized the concept of a 'paper hearing.' *Phillips v. Venker*, 316 Md. 212, 218, 221–222, 557 A.2d 1338, 1341, 1343 (1989). *See Talley v. Talley*, 317 Md. 428, 435 n. 2, 564 A.2d

entitled to relief on this ground. It is significant that the appellant was very much aware of the reason for the appellee's post trial motion—to facilitate the consultation between the Maryland and Virginia courts on the jurisdictional issue— and the relationship of that consultation to the initial motion she filed—that motion, if granted, would have resolved any conflict between the courts. Notwithstanding that knowledge, the appellant neither answered the appellee's motion nor filed

777, 781 n. 2 (1989); *Gray Panthers v. Schweiker,* 652 F.2d 146, 148 n. 3 (D.C.Cir.1980) ('paper hearing' falls within meaning of 'hearing'). Even in the context of due process at the appellate level, a hearing need not include oral presentations. *Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 318–319, 513 A.2d 893, 899 (1986). *And compare Sieck v. Sieck,* 66 Md.App. 37, 40 n. 1, 502 A.2d 528, 530 n. 1 (1986) ('[T]ried by the court' as used in Rule 2–534 includes disposition by motion for summary judgment.). Words in statutes and rules should be read in a way that advances the legislative policy involved. *Morris v. Prince George's County,* 319 Md. 597, 603–604, 573 A.2d 1346, 1349 (1990)."

The phone call between the judges and counsel for the parties was a "hearing," we agree. The title page of the transcript of the conference referred to it as such:

"The above-entitled matter came on for hearing, without a jury, before the Honorable Gayle B. Carr, a Judge in and for the Juvenile and Domestic Court for the County of Fairfax, in the courthouse, Courtroom H., Fairfax, Virginia, pursuant to notice, beginning at 9:33 o'clock a.m., where there were present ... [listing counsel for the parties and Judge Harrington, who appeared by phone]"

That was confirmed by Judge Carr when stating the purpose of the conference, "So I guess the purpose of today's hearing is for us to decide which court should assume jurisdiction." As with any in-person, in-court hearing, counsel for both parties were present and participated fully, having been afforded ample time to make their arguments and respond to the courts' inquiries.

The arguments counsel made, and the inquiries pursued by Judge Harrington, however, were directed at the merits of the jurisdiction issue; they sought only to resolve which of the courts should assume jurisdiction of the child custody case. No argument with respect to why the appellee's motion to alter or amend should have been granted or denied was made by either party. Indeed, other than Judge Harrington's admission that her previous ruling on the appellee's motion to relinquish jurisdiction was "premature," the propriety of that ruling was never mentioned, never mind explored. In short, rather than a hearing pursuant to Rule 2–311(f), assuming one had been requested, prerequisite to granting a Rule 2–535 motion, the conference call was the consultation on jurisdiction ordered by the Virginia court and

an objection to proceeding with the consultation prior to resolution of the motion.[17] Instead of objecting to the conference call, the appellant cooperated in facilitating the consultation. His first objection to the ruling on the motion to alter or amend or to proceeding with the consultation came 10 days after the ruling, after the time for answering the motion had expired. Tellingly, he did not object during the telephonic consultation, even when, by her admission that it had been ruled on prematurely, Judge Harrington signaled that the appellee's motion would be granted; on the contrary, he willingly participated in the proceedings. Rule 2–311(a) expressly does not require a party to answer the motion and also expressly permits the court to rule on the motion when no response is made. Where, as was the case here, the overriding issue in both the Maryland and the Virginia courts was the determination of jurisdiction between them, as required by the UCCJEA, the court appropriately ruled on the motion to alter or amend and did not err in doing so.

█ We next address whether it was an abuse of discretion, procedurally, to disregard the petitioner's 15–day window to file a response to the motion to alter or amend. The conference call took place on August 6, cutting short by 10 days the petitioner's time to file an answer opposing the motion. Assuming that it was error—an abuse of the Circuit Court's discretion—to have proceeded to consider, and grant, the appellee's motion before the appellant's time to answer had expired, we believe the error to have been harmless.

To be sure, the appellant was entitled to the opportunity to respond to the appellee's motion before that motion was ruled on and certainly before it was granted. Rule 2–311(b) states, as we have seen, that "[i]f a party fails to file a response required by this section, the court may proceed to rule on the

required by Maryland Code (1984, 2006 Repl.Vol.) § 9.5–206(b)(2), in implementation of the UCCJEA, § 206(b).

**17.** In fact, the only procedural objection made at the telephone conference was in regards to the mediation clause of the parties' custody agreement.

motion." We have made clear that "[n]ecessarily implicit in that [provision] is the direction that the court not rule on the motion before the time allowed for a response has elapsed. Otherwise, there would be no point in allowing time for a response." *Carroll County Dep't of Social Services v. Edelmann,* 320 Md. 150, 162, n. 2, 577 A.2d 14, 19, n. 2 (1990). By making a ruling prior to the expiration of the time allowed for filing an answer, the Circuit Court acted in direct contravention of Rule 2–311(b).

 It is just as well settled, however, as the appellee points out, an error that is not shown to be prejudicial does not warrant reversal. *Bradley v. Hazard Tech. Co.,* 340 Md. 202, 206, 665 A.2d 1050, 1052 (1995) ("Unless an appellant can demonstrate that a prejudicial error occurred below, reversal is not warranted.") (citing *Wooddy v. Mudd,* 258 Md. 234, 237, 265 A.2d 458, 460 (1970)).

The appellant argues, without specifying exactly how, that he was prejudiced by the court's early ruling. We do not agree. In fact, we believe this issue is resolved by the principle enunciated by the Court of Special Appeals in *Johnson v. Rowhouses, Inc.,* 120 Md.App. 579, 707 A.2d 933 (1998). There, the appellants filed their answer to a motion for summary judgment, and received a hearing and an adverse ruling, before the 15–day deadline for answer had passed. *Id.* at 588–589, 707 A.2d at 937. They challenged as premature, and, thus, a violation of Rule 2–311(b), both the hearing and the ruling. *Id.* at 589, 707 A.2d at 937. The Court of Special Appeals affirmed the trial court's rejection of that argument, reasoning:

> "Once appellants responded to the revised motion for summary judgment, the issue of how much time they should have been given to respond was mooted. Put another way, when an opposing party responds early to a summary judgment motion and in the response does not indicate that any additional response time is needed, the court is justified in deciding the motion forthwith. Appellants' request for more response time made after they had already lost the

motion for summary judgment plainly was made too late . . . Additionally, at no time prior to the filing of this appeal did appellants make a proffer as to what [their expert witness] would have said if additional time had been granted. In a civil case, in order to win on appeal, an appellant must show not only error but that the error was prejudicial. *Bradley v. Hazard Tech. Co.*, 340 Md. 202, 206, 665 A.2d 1050 (1995). Here, appellants have shown no prejudice and hence have shown no reversible error was committed by the court's failure to allow appellants until March 29, 1997, to file an additional response to appellee's motion."

*Id.* at 591–592, 707 A.2d at 938–39. *Compare with Concerned Citizens v. Constellation–Potomac, LLC,* 122 Md.App. 700, 755–56, 716 A.2d 353, 380 (1998) (holding that the Board's violation of the 10–day window to respond to new evidence, alone, did not constitute prejudicial error, but when the Board compounded its procedural errors by closing the record and thereby failing to give the appellant an adequate and reasonable *opportunity to respond* to the new evidence, the sum total of the procedural errors rose to the level of reversible error).

*Johnson* obviously is distinguishable factually, as, there, the appellants filed a response to the motion for summary judgment, which was considered during the litigation of, and decision on, the motion, while, here, the appellant did not file an answer to the motion to alter or amend. Another factual distinction is that, in *Johnson,* the only matter before the court for decision and decided was the motion for summary judgment, while here, although related, there were two separate matters, the appellee's motion to alter or amend and the merits of the inconvenient forum issue, only one of which, the latter, was expressly argued and decided. Nevertheless, the principle announced in *Johnson*—where the merits of the dispositive issue are litigated without objection with regard to response time, there is no prejudicial error—is equally applicable to this case.

Here, although the appellant did not file an answer to the motion to alter or amend, and even if we assume that he did not have the full opportunity to do so, it is clear that the

appellant was able to, and did, litigate the inconvenient forum issue. Indeed, his counsel cooperated in the facilitation of the telephone conference at which that occurred, appeared at the conference on the appellant's behalf and asserted, during the phone conference, not simply a response to the appellee's arguments, but the arguments in support of the appellant's position that Maryland, and not Virginia, was the appropriate jurisdiction in which to resolve the custody dispute. Therefore, as with the time to respond to the motion to alter or amend, the appellant voiced no objection to the hearing. In fact, the Virginia judge stated, without objection, that both counsel agreed that the consultation had not occurred, indicating that it was appropriate that it do so. Stated differently, by agreeing to participate in the phone conference, and making no objection to its taking place, we can assume that the appellant had no opposition to its taking place before the jurisdictional issue was decided and before the window of time for a response had lapsed.

The inconvenient forum issue was a substantive issue that required resolution before the custody proceedings pending in Virginia could proceed. The motion to alter or amend related to the issue of the appropriate forum, to be sure, but, however it was decided, it would not have resolved the forum issue; it still would have had to have been addressed via the consultation of the judges. A ruling on the motion to alter or amend was, in short, tangential to the forum matter. Consequently, the forum issue was the dispositive, ultimate issue. Once that issue was decided, except for record conformance, a ruling on the motion to alter or amend was of little or no moment. We hold that, even if it were error to have granted the motion to alter or amend prior to the expiration of the time for the appellant to answer the motion, the error was harmless.

### III. Application of Inconvenient Forum Analysis

The appellant next argues that the Circuit Court erred in applying an "inconvenient forum" analysis because Maryland has "continuing, exclusive jurisdiction," thus precluding any and all such claims. That jurisdiction, he reasons, can be

terminated pursuant to § 9.5–202(a), but, because that section applies to initial child custody determinations, its exercise cannot be declined pursuant to § 9.5–207(a). Pointing out that "both [he] and the child continue to reside in Maryland," thus negating the circumstances prescribed by § 9.5–202(a), and that "the circumstances of the custody arrangement have not changed," citing *Frase v. Barnhart*, 379 Md. 100, 112, 840 A.2d 114, 121 (2003) and *Domingues v. Johnson*, 323 Md. 486, 492–93, 593 A.2d 1133, 1136 (1991) for the proposition that some change is a prerequisite for a change in custody, the appellant "submits that an inconvenient forum analysis is not appropriate." [18] More particularly, relying on the "strong preference of the UCCJEA and the P[arental] K[idnapping] P[revention] A[ct, 28 U.S.C. § 1738(A)(f) ] to eliminate conflicts of jurisdiction and to establish the principles of continuing jurisdiction" and this Court's "material change in circumstances" requirement for a change in custody arrangements, the appellant urges "a bright line rule that absent a showing of a material change in circumstances, such as a move by one party not contemplated by the original custody order, an inconvenient forum analysis is not called for and constitutes error."

---

**18.** The appellant cites, as bearing out his conclusion, *Prickett v. Prickett*, 167 P.3d 661 (Wyo.2007); *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006); *Stoneman v. Drollinger*, 314 Mont. 139, 64 P.3d 997 (2003); *Shanoski v. Miller*, 780 A.2d 275 (Me.2001); *Marriage of Hocker*, 752 N.W.2d 447 (Iowa App.2008); *Griffith v. Tressel*, 394 N.J.Super. 128, 925 A.2d 702 (2007). The appellee also relies on *Prickett, Watson, Stoneman* and *Shanoski* to support her position. She points out, in that regard, that, whatever was the court's decision on the merits, each of the courts conducted an inconvenient forum analysis. *See Prickett*, 167 P.3d at 665; *Watson*, 724 N.W.2d at 29 ("Jurisdiction remained in the district court either until jurisdiction was lost under § 43–1239(a) [Nebraska's version of UCCJEA § 202] or until the court declined to exercise its jurisdiction under § 43–1244 [Nebraska's version of UCCJEA § 207] for the reason of an inconvenient forum."); *Stoneman*, 64 P.3d at 1000–06; *Shanoski*, 780 A.2d at 278–79 (after noting that "[p]ursuant to the UCCJEA, Maine has exclusive continuing jurisdiction over this visitation dispute because Maine made the initial child custody determination and one parent has a significant connection with Maine," the court stated that the UCCJEA "contemplate[s] a court declining to exercise jurisdiction").

The appellee rejoins, there is no inconsistency or conflict between § 9.5–202 and § 9.5–207. Although she concedes that Maryland has continuing, exclusive jurisdiction, which has not been terminated pursuant to § 9.5–202(a), she concludes, "[t]aken together, these statutes clearly establish that a court that has jurisdiction to modify a child custody order may also decline to exercise that jurisdiction if it determines that it is an inconvenient forum." The appellee likewise rejects the appellant's argument that whether there has been a change in circumstances since entry of the custody order is a relevant and threshold element to be considered when the convenience of the forum is at issue. She notes that neither by its terms nor context does § 9.5–207(a) contain such an element or requirement and, in any event, determining the most convenient forum is separate and distinct from deciding the custody question, which, by the way, was not an issue to be decided at that time.

 Determining whether the inconvenient forum analysis conducted in this case was appropriately done involves statutory construction, as it requires us to construe § 9.5–207(a). Statutory construction is a legal question, which we approach and decide *de novo, Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004) (interpretations of the Maryland Code and the Maryland Rules are reviewed *de novo* ); *Nesbit v. Gov't Employees Ins. Co.,* 382 Md. 65, 72, 854 A.2d 879, 883 (2004) (interpretations of Maryland statutory and case law are conducted under a *de novo* review), without deference or regard to a prior interpretation. The canons governing statutory construction are well-settled and straightforward:

> "In statutory interpretation, our primary goal is always 'to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules.' *Barbre v. Pope,* 402 Md. 157, 172, 935 A.2d 699, 708 (2007); *Gen. Motors Corp. v. Seay,* 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). *See also Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470, 482 (2007). We begin our analysis by first looking to the normal, plain

meaning of the language of the statute, reading the statute as a whole to ensure that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' *Barbre,* 402 Md. at 172, 935 A.2d at 708; *Kelly,* 397 Md. at 420, 918 A.2d at 482. *See also Kane v. Bd. of Appeals of Prince George's County,* 390 Md. 145, 167, 887 A.2d 1060, 1073 (2005). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *Barbre,* 402 Md. at 173, 935 A.2d at 708–09; *Kelly,* 397 Md. at 419, 918 A.2d at 482; *City of Frederick v. Pickett,* 392 Md. 411, 427, 897 A.2d 228, 237 (2006); *Davis v. Slater,* 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004)."

*Ray v. State,* 410 Md. 384, 404–405, 978 A.2d 736, 747–48 (2009).

Section 9.5–207 is a part of the UCCJEA, a statutory scheme. In that circumstance, the statute to be interpreted

"must be interpreted in that context. *GEICO v. Ins. Comm'r,* 332 Md. 124, 131–32, 630 A.2d 713, 717–18 (1993). That means that, when interpreting any statute, the statute as a whole must be construed, interpreting each provision of the statute in the context of the entire statutory scheme. *See Roberts v. Total Health Care, Inc.,* 349 Md. 499, 523, 709 A.2d 142, 154 (1998); *County Comm'rs v. Bell Atlantic,* 346 Md. 160, 178, 695 A.2d 171, 180 (1997); *Hyle v. Motor Vehicle Admin.,* 348 Md. 143, 149, 702 A.2d 760, 763 (1997); *Blondell v. Baltimore Police,* 341 Md. 680, 691, 672 A.2d 639, 645 (1996). Thus, statutes on the same subject are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or 'any portion, meaningless, surplusage, superfluous or nugatory.' *GEICO,* 332 Md. at 132, 630 A.2d at 717."

*Whiting–Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 302–303, 783 A.2d 667, 672 (2001).

At the outset, we acknowledge the correctness of the appellee's position with regard to the appellant's "changed

circumstances" argument. As the appellee points out, neither § 9.5–202, on which the appellant heavily, if not exclusively, relies, nor § 9.5–207 contains any such threshold requirement or addresses, as an element, the determination of custody. Indeed, as the appellant recognizes, the purpose of the UC-CJEA is "to provide stronger guidelines for determining which state has jurisdiction, continuing jurisdiction, and modification jurisdiction over a child custody determination," *In re Kaela C.*, 394 Md. 432, 455, 906 A.2d 915, 928 (2006), an important, but essentially preliminary, procedural matter, not to resolve the substantive issue of custody.

We also agree with the appellee that the statutes are not in conflict. Both § 9.5–202(a) and 9.5–207 are clear and unambiguous and they address separate situations, the former, the circumstances in which the court's continuing exclusive jurisdiction may be terminated and the latter, when the court's exercise of the jurisdiction to make a child custody determination may be declined. These statutes can, and do, co-exist. Indeed, a statute that defines when a court's jurisdiction will be terminated is not at all inconsistent with one which permits a court with jurisdiction, upon consideration of enumerated factors, to decline to exercise that jurisdiction. After all, in order to be able to decline to exercise jurisdiction, the court must have jurisdiction in the first place. This very point was made by the Supreme Court of Nebraska in *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24, 33 (2006):

> "A court with exclusive and continuing jurisdiction may decline to exercise its jurisdiction if it determines that it is 'an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.'"

*See Stoneman v. Drollinger*, 314 Mont. 139, 64 P.3d 997, 1000 (2003) ("As the 'home state' of a child, Montana will continue to have exclusive, continuing jurisdiction unless a Montana court declines to exercise its jurisdiction. Section 40–7–202(2), MCA. A court may decline to exercise its jurisdiction at any time if the court determines that it is an inconvenient forum under the circumstances and that a court of another state is a

more appropriate forum to make the child custody determination."); *Shanoski v. Miller*, 780 A.2d 275, 278–79 (Me.2001).

 The appellant suggests that § 9.5–207 may have applicability only in the context of an initial child custody determination. We do not agree. Section 9.5–207(a)(1) provides:

"A court of this State that has jurisdiction under this title to make a child custody determination may decline to exercise its jurisdiction *at any time* if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."

(Emphasis added.) This language does not include any reference to the "initial child custody determination" and, as a matter of fact, its generality belies any such interpretation. The appellee has it right when she posits, " '[j]urisdiction under this title' clearly includes § 9.5–202, one of the statutes in Title 9.5 of the Family Law Article. . . . Section 9.5–101(d)(2) very specifically states that a 'child custody determination' includes 'a permanent, temporary, initial and modification order.' "

 We hold that the Circuit Court was not precluded from conducting an inconvenient forum analysis simply because it had "continuing, exclusive jurisdiction;" on the contrary, it was required by § 9.5–207(a) to do so.

 If this Court were to hold, as we do, that an inconvenient forum analysis was appropriate under the circumstances of this case, the appellant argues nevertheless that the Circuit Court erred in the conclusion that it reached as a result of that analysis. For the reasons he proffered in support of his "continuing, exclusive jurisdiction" argument and the further reason that, on balance, the factors the court was required by § 9.5–207(b) to consider in making its jurisdiction determination favor Maryland as the appropriate jurisdiction to hear the custody matter, he concludes that its decision to relinquish that jurisdiction "constituted an abuse of discretion under the governing state and federal law."

Not unexpectedly, the appellee sees the matter entirely differently. She believes, and 'therefore argues, that, because the Circuit Court's decision is fully supported by the evidence, the court did not abuse its discretion in reaching it.

The decision whether to relinquish the court's jurisdiction in favor of a more convenient one is one addressed to the sound discretion of the court. *See Krebs v. Krebs,* 183 Md.App. 102, 117, 960 A.2d 637, 646 (2008) (reviewing a court's decision to decline jurisdiction for abuse of discretion). This is confirmed by the fact that the statute authorizing the making of the decision enumerates a number of factors that the court must consider, without prescribing what the decision should be. "Before finding an abuse of discretion we would need to agree that, 'the decision under consideration [is] well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.'" *In re Yve S.,* 373 Md. 551, 583–84, 819 A.2d 1030, 1049 (2003) (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312–13, 701 A.2d 110, 118–19 (1997) (some internal citations omitted)). More recently, in *Touzeau v. Deffinbaugh,* 394 Md. 654, 669, 907 A.2d 807, 816(2006), we have defined abuse of discretion more expansively:

"We have defined abuse of discretion as 'discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' *Jenkins v. City of College Park,* 379 Md. 142, 165, 840 A.2d 139, 153 (2003) (emphasis not included). *See also Garg v. Garg,* 393 Md. 225, 238, 900 A.2d 739, 746 (2006) ('The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law.') quoting *Jenkins v. State,* 375 Md. 284, 295–96, 825 A.2d 1008, 1015 (2003); *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118–19 (1997) ('There is an abuse of discretion where no reasonable person would take the view adopted by the trial court,' or when the court acts 'without reference to any guiding rules

or principles.' An abuse of discretion may also be found where the ruling under consideration is 'clearly against the logic and effect of facts and inferences before the court,' or when the ruling is 'violative of fact and logic.')" (citations and some internal quotations omitted).

Section 9.5–207(b)(2) sets out eight factors, the relevant ones of which § 9.5–207(a)(1) requires the court to consider when addressing the question of the convenience of the forum. In her motion to the Circuit Court seeking relinquishment of jurisdiction to Virginia, the appellee addressed some of those factors, emphasizing those that she believed best supported her case for shifting jurisdiction to Virginia. More particularly, she focused on the nature and location of the evidence she believed "essential in a custody and visitation proceeding," concluding that it would come from "teachers, doctors, therapists and coaches."

The appellee alleged that all of these witnesses were in Virginia and that some were professional witnesses, who would have to be compensated for their time and travel. That cost would be "unnecessarily costly," she opined, if the professional witness had to travel to Maryland. She concluded that "[t]he balance of hardships in terms of witnesses and evidence weighs heavily in favor of the [appellee]." As we have seen, the appellee continued her focus and emphasis on the nature and location of the evidence essential to the trial of the custody matter at the telephone conference on jurisdiction. Indeed, in response to a question from Judge Harrington, she identified the professional witnesses she intended to call. She did not, at that time, address in argument each of the factors she believed relevant, nor was she asked to do so.

The appellant also addressed the § 9.5–207(b)(2) factors in his opposition to the motion to relinquish. He did so by denying the appellee's allegations with regard to the factors, while noting that

"Every factor that [the appellee] claims makes Maryland an inconvenient forum also makes Virginia an equally inconvenient forum for the [appellant]. The difference is that this

case was originally litigated and settled in Maryland, not Virginia. Pursuant to § 9.5–202, it is Maryland, not Virginia, that has exclusive, continuing jurisdiction, until one of the two conditions of that statute have been met. Neither have been met, and this Motion, therefore, is wholly without merit."

Thus, as he has done at all stages of this litigation, the appellant's main argument was that Maryland, as the continuing, exclusive jurisdiction, was the appropriate venue for determining this custody matter, that inconvenient forum analysis did not apply. He made that argument during the telephone conference. But he also, as we have seen, countered the appellee's "Maryland is an inconvenient forum" argument, denying that was the case and pointing to the ability to depose Virginia witnesses for later use of their testimony in Maryland and the possibility of the witnesses testifying by telephone. Like the appellee, the appellant did not try to relate how each of the enumerated factors was relevant or supported his case.

Having heard the arguments, Judge Harrington issued her ruling, relinquishing Maryland's jurisdiction. Pertinently, she said:

"So I think it's really a question of both cases, I mean, both jurisdictions being almost equally poised to do this. And what puts me over the top in coming to a decision that it would be appropriate to relinquish jurisdiction is, I do think that mom has lined up professional witnesses and they're more concrete than what dad has proposed. And I do think it's important to consider the convenience of the professionals, their schedule, their time and their ability to appear because what they present may or may not be significant to this case if the parties can't settle it ahead of time and it certainly will be if it goes to trial. So I'm persuaded that it is appropriate to relinquish jurisdiction and allow the matter to proceed to Virginia where it's been filed."

That ruling was grounded in the inconvenient forum arguments that counsel, specifically the appellee's counsel, made,

to be sure, but, also, implicitly, it reflects an understanding and appreciation of some of the relevant factors, i.e. § 9.5–207(b)(2)(ii), (iii), (vi), (vii) and (viii). Judge Harrington, consequently, had a basis for her conclusion and her rationale was certainly not unreasonable. Her decision was not "beyond the fringe" of what this Court deems acceptable. We discern no abuse of discretion. We hold, therefore, that the Circuit Court did not abuse its discretion when it, pursuant to § 9.5–207, relinquished jurisdiction to the Virginia court.

**JUDGMENT AFFIRMED, WITH COSTS.**