**Jonathan R. REES, Appellant,**

**v.**

**Blanca L. REYES, Appellee,**
**a/k/a Blanca L. Rees.**

**No. 91–740.**

District of Columbia Court of Appeals.

Argued Dec. 11, 1991.

Decided Feb. 14, 1992.

Jonathan R. Rees, pro se.

Suzanne H. Jackson, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and KERN, Senior Judge.

KERN, Senior Judge:

Appellee-mother in February, 1991, filed in the Arlington, Virginia court a petition for custody of the parties' child.[1] Appellee was then living in Virginia, but had formerly resided in the District of Columbia with appellant-father. On March 14th, the Virginia court granted appellee *temporary* custody of the child. The Virginia court acknowledged, as the trial court here noted in its order now on appeal, that the issue of its ultimate jurisdiction was to be litigated.

Thereafter, appellant-father filed on March 20th in the trial court here a motion for temporary custody, as well as a complaint for (1) annulment of the parties' marriage and (2) award of the permanent custody of the child. Appellee responded with a Motion to Dismiss, asserting that Virginia was the appropriate and convenient forum in which to litigate the issue of custody and that the interest of the child would best be served by proceeding in Virginia. The trial court held an evidentiary hearing in May, heard argument on June 11th, and on June 28th, 1991, issued its order, which was accompanied by extensive findings of facts and conclusions of law.

The trial court denied appellant's motion for temporary custody, certified his annulment action to the trial court's Family Division, and dismissed the custody action on the ground that the Virginia court was the more appropriate forum for the determination of custody. Appellant does not contend (and, indeed, has provided no record for this court to consider such contention)

that the court's findings lack support in the evidence. Rather, appellant's contention seems to be that the trial court's decision that the Arlington, Virginia court was the appropriate forum for custody determination under the particular circumstances runs afoul of the Parental Kidnapping Prevention Act of 1980 ("PKPA") (28 U.S.C. § 1738A (1991 Repl.))[2] and constitutes a precedent that thwarts the Congressional intent in enacting this particular legislation. We affirm.

The trial court determined in its findings of facts pursuant to the evidentiary hearing that on January 28, 1991, appellee-mother left the marital abode in the District of Columbia because of marital difficulties and, with her two children, moved to and established residence in Arlington, Virginia. The court pointed out in its conclusions that the Virginia court, in granting *temporary* custody of the parties' child to appellee-mother, was acting pursuant to a mandate from the Uniform Child Custody Jurisdiction Act ("UCCJA"),[3] consistent with the PKPA,[4] by exercising its *emergency* jurisdiction to make a temporary custody determination.

The record reflects that the court, with the "express permission of the parties," contacted the judge in the Virginia court who presided over the case and who had issued the temporary custody order. The judge of the Virginia court confirmed that his order was issued for emergency purposes pursuant to UCCJA 20–126(3)(ii).[5]

1. Appellee has a child older than the particular child whose custody is at issue here but his father is not appellant. Appellee's sister, as well as other relatives, reside in Arlington.

2. The PKPA was enacted
    by Congress to deal with the recurring problem of interstate controversies over child custody decisions. The Act establishes criteria to determine which state shall have jurisdiction over custody disputes where more than one state can assert an interest in the matter. Thus, the Act establishes the conditions under which one state must give full faith and credit to the custody decrees of another state.
    *In re B.B.R.,* 566 A.2d 1032, 1036–37 (D.C.1989) (footnote omitted).

3. VA Code § 20–126(3)(ii). The UCCJA is model legislation which has been adopted by every

state, including Virginia (VA Code § 20–125 *et seq.*) and the District of Columbia (D.C.Code § 16–4501 *et seq.* (1989 Repl.)). *See In re B.B.R., supra* note 2, 566 A.2d at 1036 n. 10.

4. 28 U.S.C. § 1738A(b)(3), (c)(2)(C)(ii); *see In re B.B.R, supra,* note 2, 566 A.2d at 1040 n. 24. Although the UCCJA was designed to address the same child custody problems addressed by the PKPA and most provisions of both statutes are nearly identical, "the PKPA controls pursuant to the supremacy clause" when "compliance with both the [UCCJA] and the PKPA proves 'literally impossible.'" *Id.* at 1036 n. 10.

5. VA Code § 20–126(3)(ii). The Virginia court's order granted appellee-mother temporary custody and directed that appellant-father work out with a Virginia probation officer his visitation with the parties' child.

This section of the UCCJA provides for jurisdiction if "it is necessary in an emergency, among others, to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent" and advised that "but for the necessity of resolving the instant motion in the Superior Court," the Virginia authorities would have proceeded with studies into the child's background and the home history.

■ The trial court declined jurisdiction on the basis that the District of Columbia was an inconvenient forum to make a custody determination and that Virginia was the more appropriate forum, and, "absent an abuse of discretion," we will not overturn such a decision. *Stevenson v. Stevenson*, 452 So.2d 869, 871 (Ala.Civ.App.1984). The trial court's determination was properly made under the UCCJA [6] and quite compatible with the provisions of the PKPA. Specifically, the latter statute provides that the District of Columbia may "decline[ ] to exercise jurisdiction on the ground that [Virginia] is the more appropriate forum to determine the custody of the child, and ... it is in the best interest of the child that [Virginia] assume[s] jurisdiction." 28 U.S.C. § 1738A(c)(2)(D).

■ We note that the trial court recounted that "[a]ll such 'present and future' information" concerning appellee, the child, and the contacts with appellee's extended family were in Virginia. In addition, the trial court noted that the persons with "information about the relative abilities of the parents, the suitability of the child's current caretaker, and the availability of social services, opportunities for education and day care" for the child were "primarily" in Virginia.

The trial court further found that appellee-mother "had applied for various types of public assistance benefits in the State of Virginia"; she and her children currently "have no ties to the District of Columbia"; and, "[a]ll aspects of the minor child's daily care and ongoing needs are matters that are occurring in the State of Virginia and there is no apparent reason for the child to be inside the District of Columbia ever again, save for potential visitation with the father." The trial court went on to note in its findings that "[p]ersonal stability [of the parties] is a relevant issue in child custody litigation," and that "certain aspects of the father's behavior are matters that concern persons in Virginia, and those persons are potential witnesses." [7]

The trial court concluded

that there is no appropriate reason for the Superior Court to assume jurisdiction of this custody dispute as a discretionary matter.... Because the State of Virginia has become the actual and legitimate residence of the child and [appellee], the balance of the controversy belongs in Virginia, subject to that State's jurisdictional requirements.... Superior Court is an inconvenient forum for [appellee]. This court is satisfied that Virginia is not an inconvenient forum for [appellant] in this action, both because of its close geographical proximity and because he has freely resorted to Virginia courts for his own purposes.[8]

We are not persuaded upon the particular facts in the instant case that the trial court contravened the applicable statutes or abused its discretion. The court considered the interests of the child, as it must, and concluded that for determination of permanent custody (1) the District of Columbia is an inconvenient forum for the appellee-mother and the child and (2) Virginia is *not* an inconvenient forum for the appellant-father.

6. D.C.Code §§ 16–4503(a)(1)(B), –4507(c) (1989 Repl.).

7. The trial court was referring to certain incidents that it found had occurred in Virginia, involving Virginia residents, that were relevant to the issue whether the best interest of the child demonstrated that appellant-father or appellee-mother should have custody.

8. The trial court found that appellant-father was in "close geographical proximity" to Virginia, and he had extensively "utilized the Virginia court system to pursue certain aspects of his ongoing disputes."

We note also that PKPA was enacted to prevent jurisdictional conflict and competition over child custody, and in particular, to deter parents from abducting children for purpose of obtaining custody awards. *Peterson v. Peterson,* 464 A.2d 202 (Me.1983); Congressional Findings and Declaration of Purposes for PKPA, 28 U.S.C. § 1738A note § 7(c). Here, the trial court found that "[t]here is no evidence whatsoever to suggest that [appellee] relocated [the child] to the State of Virginia for any potential litigative advantage ... or for purposes of evading any court order."

Appellant's reading of *In re B.B.R., supra* note 2, 566 A.2d at 1032, is too narrow, and the facts and circumstances of *B.B.R.* are inapposite to the instant case. In that case, this court concluded that California, not the District of Columbia, was the appropriate jurisdiction under the particular facts of the case. There, the child was born in California to one of the parties to the litigation. *Id.* at 1034. Two days later, the other party removed the child to the District of Columbia. *Id.* at 1035. Almost immediately thereafter, the mother of the child commenced a custody proceeding in California. *Id.* The party living with the child in the District of Columbia did not commence a custody suit in the District of Columbia courts until *after* the California court had issued a writ of *habeas corpus* directing the child to be brought before the California court. *Id.* Thus, there was no custody determination by the District of Columbia court, prior to the California court's issuance of a writ, that would have provided a basis for jurisdiction in the District pursuant to PKPA (28 U.S.C. § 1738A(g)). *Id.* at 1037.

The instant case is in contrast to *In re B.B.R.* Here, the Virginia court, prior to the commencement of a custody action here, granted temporary emergency custody as mandated by its own law (§ 20–126(3)) and consistent with the PKPA (28 U.S.C. § 1738A(c)(2)(C) ). Also, the court here, unlike the trial court in *B.B.R.*, made a determination in accordance with the UCCJA (§ 16–4507) and PKPA (28 U.S.C. § 1738A(c)(2)(D)), that (1) the foreign jurisdiction was *not* an inconvenient forum for the one party and (2) was a more convenient forum for the other.

In sum, the Virginia court's temporary custody order in an emergency situation was consistent with PKPA and UCCJA, and as such, was entitled to "full faith and credit" by the District of Columbia. Also, the District of Columbia trial court's subsequent determination that the child's contacts with Virginia were significant and that her best interests would be served by proceeding in that forum are supported by the record before us on appeal. Hence, the court's determination that the District of Columbia is an inconvenient forum, while Virginia is not, was not an abuse of discretion, and must be and is

*Affirmed.*