*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-FM-358

IEASHA HIPPS, APPELLANT,

v.

RUBEN CABRERA, APPELLEE.

09/28/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(DRB-3850-06)

(Hon. Yvonne Williams, Trial Judge)

(Submitted March 29, 2017                    Decided September 28, 2017)

*Gregory F. Jacob*, *David R. Dorey*, and *James M. Harrigan* were on the brief for appellant.

Ruben Cabrera, *pro se*.

Before FISHER, THOMPSON, and BECKWITH, *Associate Judges*.

THOMPSON, *Associate Judge*:   Appellant Ieasha Hipps (the "Mother") and appellee Ruben Cabrera (the "Father") are the parents of two minor children.  The Mother contends in this appeal that the trial court erred or abused its discretion in numerous respects:   by relinquishing jurisdiction over the custody orders pertaining to the children in light of the Father's "unilateral actions" in moving the

children to New York; by declining to impose sanctions for the Father's failure to comply with the terms of the custody orders, failure to comply with discovery obligations, and submission of allegedly fraudulent evidence; and by excluding certain evidence pertinent to the Mother's request for sanctions under Super. Ct. Dom. Rel. R. 11 ("Rule 11 sanctions") for alleged fraud. The Mother further argues that the trial judge was biased in favor of the Father because of his *pro se* status and should therefore be disqualified from hearing the case on (the requested) remand.

For the reason discussed below, we affirm the trial court's order denying Rule 11 sanctions. We also affirm the trial court's decision to relinquish jurisdiction over the custody orders. As explained in more detail *infra*, we do so because the court's decision was within the broad discretion we afford it under the "inconvenient forum" section of the Uniform Child Custody Jurisdiction and Enforcement Act of 2000 ("UCCJEA") (the standards of which the trial court applied even though it did not specifically refer to the section). Finally (and relatedly), we vacate the other challenged rulings.

**I.**

This matter commenced in December 2006, when the Father filed a complaint for custody claiming that the Mother had failed to provide "appropriate" living conditions for the children. On August 16, 2012, the family court issued a final custody order (the "2012 Custody Order") granting the Father primary physical and legal custody of the subject minor children. The 2012 Custody Order requires the Father "to consult [the Mother] and to allow opportunity for her input on matters of significance which impact upon the health, education, safety[,] and general well[-]being of the children." The 2012 Custody Order further provides that the Father has "an obligation to advise [the Mother] of significant decisions that need to be made to serve the children's best interest" and "apprise[] [the Mother] of significant medical procedures, tests, and conferences." In addition, the 2012 Custody Order authorizes the Mother to "interact with the children's educational placement and . . . attend parent/teacher conferences, performances/celebrations, and school activities."

As to visitation, the 2012 Custody Order calls for the Mother to have "visitation from Friday at 7:30 p.m. to Sunday at 3:00 p.m." every other weekend and alternate yearly custody of the children for holidays such as Thanksgiving,

Christmas, and New Year's Day.[1]  The 2012 Custody Order also allotted the Mother half of the children's spring-break time and "summer time-sharing with the subject minor children from July 1 until July 31."  Additionally, that custody order states that "[n]either parent [is to] make plans or arrangements that would interfere with the other parent's authority or interfere with the other parent's time with the subject minor children without the express agreement of the other parent"; that "[e]ach parent shall have complete medical information regarding the subject minor children"; and that "[t]he parents shall work together as cooperating parents to maintain consistent structure" for the children.  The 2012 Custody Order also provides that the parties "may agree, in consultation with the Guardian *Ad Litem*, . . . to modify the time[-]sharing schedule with regard to visitation periods and dates."[2]

In August 2013, the Mother filed an Emergency Motion and Request for Emergency Hearing (to which the Father did not respond), asserting *inter alia* that the Father had taken the children to reside in New York.  On November 18, 2014,

_____

[1]  The court slightly modified the 2012 Custody Order through an October 2012 "Supplement to Final Custody Order" and a November 2012 "Second Supplement to Final Custody Order."

[2]  The Superior Court record shows that the appointment of the Guardian *Ad Litem* terminated on April 8, 2013.

the family court judge then-presiding over the case issued a further custody order (the "2014 Custody Order") in which the court acknowledged the Mother's belief that the Father "now resides in New York," questioned whether the court had "ongoing jurisdiction to modify" the custody arrangements, identified as the "primary remaining issue . . . how to facilitate [the Mother's] visitation with the children," and stated that "frequent weekend[]" visits "may not be feasible." The 2014 Custody Order required the Father to ensure that the children were brought to the District of Columbia for Thanksgiving of that year ("or risk contempt of court") and directed the parties to attempt on their own to reach an agreement to modify the prior visitation schedule (which the court said "remain[ed] in effect") and, if no agreement could be reached, to contact the court's free mediation service by December 1, 2014, to develop "an alternate schedule for [the Mother's visitation] considering [the Father's] relocation with the children."

In November 2015, the Mother filed a motion requesting that the court hold the Father in contempt. The motion recited that the Father had moved with the children to New York without the Mother's consent and alleged that he had "steadfastly refused to bring the children to the District [of Columbia]" for scheduled visitation and failed to consult with the Mother and keep her informed about the children. The motion also alleged that the Father had failed to comply

with the terms of the 2014 Custody Order, including failing to bring the children to the District for their 2014 Thanksgiving visit with the Mother and failing to cooperate with the court's mediation service.[3]

In a written opposition to the Mother's motion for contempt, the Father admitted that he had not brought the children to the District for visitation but claimed that "he informed the Mother and the Guardian *Ad Litem* that he was considering moving to New York" and received their consent to make such a move.[4] The Father also claimed that the Mother had "frequently missed her scheduled access with the children," that he had kept the Mother informed of the children's schools' contact and medical information, and that he did not comply with the 2014 Custody Order because the Mother had "refused to return the children" to him "at the agreed upon time and place" and had "provided [him with] false addresses." The Father attached to his opposition copies of two text

---

[3] The Mother acknowledged that she, too, had failed to contact the mediation service by the date specified in the 2014 Custody Order.

The Mother further claimed that the Father "violated, and continues to violate, the Parental Kidnapping Prevention Act, D.C. Code § 16-1021 *et seq.*"

[4] At the March 3, 2016, hearing in this matter, the Father testified that he moved to Amsterdam, New York, for a job, to benefit from lower rent than he paid in this area, and so that he would not have to raise the parties' daughter "in a fast environment."

messages, which he alleged were sent to him by the Mother on October 20, 2015, and December 17, 2015 (the "claimed text-message dates"), stating:

> You should of [sic] drop [sic] the child support and maybe I didn't have to lie to take you to court[.] [D]rop the rears [sic] and I'll say we came to an agreement. . . .

> If I cant [sic] have the children[,] I hope they end up in a foster care. I hate all you catholic fagots . . . and my kids will not practice that religion[,] only allah!!! I hope you and your family burns like your dead aunt!!!

On February 1, 2016, the Mother filed a motion for Rule 11 sanctions against the Father, claiming that the text messages had been manufactured and that the Father had lied under oath. The Mother obtained her cell phone records from her cellular carrier, Sprint, and thereafter noticed a deposition of Sprint's custodian of records for the purpose of authenticating those records. The deposition was conducted on February 29, 2016, by remote electronic means (with the Sprint deponent in Kansas and the Mother's counsel in his law office in the District). Despite notice of the deposition, the Father did not attend. The Mother also noticed a deposition of the Father for the same date and location and requested that he produce his cell phone for inspection. The Father did not appear for his scheduled deposition. On February 26, 2016, the Mother filed a motion to compel the Father to cooperate in discovery, asserting that he had failed to respond to a request for production of documents. On February 29, 2016, the Mother also

asked the court to sanction the Father for failing to attend his deposition and produce his cell phone for inspection.

On March 3, 2016, the Honorable Yvonne Williams presided over an evidentiary hearing on the Mother's motions and, the same day, announced rulings from the bench, denying the motion for Rule 11 sanctions and relinquishing continuing jurisdiction over the custody dispute. On March 14, 2016, and April 7, 2016, the trial court also issued written orders reiterating its decision to relinquish jurisdiction, denying the Mother's motions for contempt and for discovery sanctions, and denying "as moot" the Mother's motion to compel the Father's cooperation in discovery. We further describe the court's stated reasons for its rulings in analyzing the Mother's claims on appeal.

## II.

The court began its rulings from the bench by declining to sanction the Father for manufacturing evidence, reasoning "there's just no evidence of that." The court's ruling reflected in part a colloquy between the court and the Mother's counsel in which counsel sought to have admitted into evidence the Mother's Sprint phone records for the claimed text-message dates and surrounding dates, as

authenticated during the deposition of the Sprint representative, as well as the transcript of the Sprint representative's deposition. Counsel proffered (and the Mother now argues) that the Sprint records show that she did not send the text messages the Father appended to his opposition to the motion for contempt. The court declined to admit the records, citing "the [federal] rules of evidence," stating that "it[] [was] not clear the declarant [i.e., the Sprint representative] was unavailable," and reasoning that even if the declarant was unavailable, her deposition testimony had "not been subject to cross-examination," because the Father had not been present at the deposition. The court overruled an objection by the Mother's counsel that the Father should not be allowed to "stymy a witness from putting . . . evidence on the record by not coming" to the deposition.[5]

The Mother contends that the court's ruling was erroneous and "extraordinarily prejudicial to [the] Mother," including with respect to the Father's credibility regarding his inability to comply with the visitation provisions of the 2012 Custody Order. The Mother also contends that the trial court erred in failing to sanction the Father under Rule 11 for the alleged fraud. We conclude that the

---

[5] The Father testified that he informed the Mother's counsel that for financial reasons he could not "make it [to the District] on the [noticed date for the Sprint representative's deposition]" and that the Mother's counsel refused to accommodate his request to conduct the deposition by telephone or on a different date.

Mother ultimately was not prejudiced by the court's ruling excluding the Sprint records because they would not have been sufficient to enable the Mother to succeed on her motion to sanction the Father for fraud (and because, for the reason explained below, we are vacating the ruling on the contempt motion). For that reason, we need not reach the question of whether it was error for the court to decline to admit the Sprint records.

A party alleging fraud "must do so with particularity and must prove it by clear and convincing evidence." *Park v. Sandwich Chef, Inc.*, 651 A.2d 798, 803 n.3 (D.C. 1994) (internal quotation marks omitted). Although the Sprint records were evidence tending to corroborate that the Mother did not send the text messages in question from her Sprint cell phone, the Father's testimony during the hearing indicated that the parties' children, even without activated cell phones, make calls and send texts through downloadable "phone apps," including "Text Plus" and "Magic Jack."[6] We note that the messages attached to the Father's opposition to the contempt motion do not show anything that identifies them as having been sent via the Mother's Sprint phone number. (In that regard, they are

---

[6] Case law, too, contains discussions of the use of the "textPlus" application to send text messages. *See, e.g.*, *Rivera v. State*, No. 03-15-00116-CR, 2016 Tex. App. LEXIS 4953, at *7–8 (Ct. App. May 11, 2016).

quite unlike the text messages included in the Mother's Appendix at pages 410 to 412, which show a name or nickname or other identifying information in a header.) Because the Sprint records do not eliminate the possibility that the Mother (or someone else) sent the text messages through a device or method other than her Sprint cell phone, the Sprint records would not have enabled the Mother to prove by clear and convincing evidence that the Father manufactured evidence or committed perjury in averring that she sent the messages to him.[7] We therefore conclude that the Mother is not entitled to relief on the basis of this assigned error. Accordingly, we decline to disturb the order denying the Mother's motion for sanctions for the Father's submission of allegedly fraudulent evidence.[8]

---

[7] Whether evidence meets the clear-and-convincing standard is a question of law that we review de novo. *See In re Pelkey*, 962 A.2d 268, 279 (D.C. 2008).

[8] As discussed *infra*, the court's determination to relinquish jurisdiction raises the issue of whether it was appropriate for the court to rule on the Mother's pending motions for discovery sanctions and contempt. However, the court did not lose jurisdiction as to the motion for Rule 11 sanctions. "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made [even] after the principal suit has been terminated." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990); *see also Haden v. Frazier*, 611 A.2d 546, 548 (D.C. 1992) ("[T]he dismissal was not in itself dispositive of [the] motion for Rule 11 sanctions." (citing *Cooter & Gell*, 496 U.S. at 395–96)).

**III.**

We next consider the Mother's contention that the trial court "committed legal error by relinquishing its exclusive, continuing jurisdiction over the 2012 [Custody] [O]rder." The court noted in its ruling from the bench that, for three years, the children had been in Amsterdam, New York, where they "have a routine" and "an entire life," are "in school," and, according to the Father's testimony, are "doing well." The court stated that it could not "say that it's in their best interest to have them uprooted and moved back to the District of Columbia." The court therefore "sa[id] specifically [that it was] declining jurisdiction over the children because they have not lived [in the District] in six years" (a period that included their time living with the Father in Maryland before they went with him to New York). The court recognized that the Mother lived in the District, but found that "the children have no contact with the District of Columbia basically." The court stated that the parties would "need to register the . . . custody order" and "every permutation of it" in Amsterdam, New York, and move for any modification of custody there. The court also found that the Father "essentially has final decision[-]making authority over the children [under the terms of the] 2012 [Custody Order]." In its March 14, 2016, written order, the court further found more specifically that "evidence regarding the best interest of the children is

currently in New York" and, employing the terms of the governing statute (D.C. Code § 16-4602.02 (a)(1) (2012 Repl.)), that "substantial evidence regarding the 'care, protection, training, and personal relationship[s]' [of the children] no longer exists in the District of Columbia."

The Mother argues that the trial court erred by "relinquishing its exclusive, continuing jurisdiction" over the 2012 Custody Order. Citing this court's decision in *Mitchell v. Hughes*, 755 A.2d 456 (D.C. 2000), the Mother contends that "[i]t cannot be the law that a parent subject to a custody order providing for routine visitation in the District may unilaterally and without permission remove the children from the area and thereby defeat the District's jurisdiction and force [the other parent] to litigate in a far-off forum."

Various standards of review have potential application in our resolution of the Mother's claim. On matters of statutory construction, our review is de novo. *Wilkins v. Ferguson*, 928 A.2d 655, 667 (D.C. 2007). In addition, as a general matter, this court "review[s] legal determinations concerning the trial court's jurisdiction de novo and we review factual determinations concerning the trial court's jurisdiction for clear error." *Khawam v. Wolfe*, 84 A.3d 558, 563 (D.C. 2014). It appears, however, that we still have not decided whether the Family

Court's decision to relinquish jurisdiction based on a determination about the substantiality of a child's contacts with the District of Columbia is a "legal ruling[] to be reviewed de novo or instead should be reviewed deferentially." *Id.* (proceeding therefore by "assum[ing] without deciding that we should review [the issue presented] de novo"). By contrast, it is clear that a trial court has "broad discretion" in ruling on *forum non conveniens* motions, *DeGroot v. DeGroot*, 939 A.2d 664, 675 (D.C. 2008), and we will reverse a decision to dismiss for *forum non conveniens* "only upon a clear showing of an abuse of discretion," *Arthur v. Arthur*, 452 A.2d 160, 161 (D.C. 1982).[9]

---

[9] *See also Garcia v. AA Roofing Co.*, 125 A.3d 1111, 1115 (D.C. 2015) ("'Once this court is satisfied that the trial court took the proper factors into consideration,' reversal of its ruling on a *forum non conveniens* motion is appropriate only when there is a clear abuse of discretion."); *Miller v. Mathias*, 52 A.3d 53, 74 (Md. 2012) (explaining that before finding that a trial court's UCCJEA inconvenient-forum decision was an abuse of discretion, the appellate court "would need to agree that the decision under consideration is well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable," was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons," was made "without reference to any guiding rules or principles," or was "clearly against the logic and effect of facts and inferences before the court" (internal citations, quotation marks, and brackets omitted)).

The UCCJEA provides that District of Columbia courts have "exclusive, continuing jurisdiction" over a child custody determination they initially make unless, *inter alia*:

> (1) A court of the District determines that neither the child, nor the child and one parent, nor the child and any person acting as a parent have a significant connection with the District and that substantial evidence is no longer available in the District concerning the child's care, protection, training, and personal relationship[.]

D.C. Code § 16-4602.02 (a)(1). The record supports (and the Mother does not dispute) the court's finding that, at the time of the hearing, the Father and children had lived in New York for years and the children were in school there, and thus that the conditions specified in § 16-4602.02 (a)(1) were satisfied. Accordingly, the court did not err in determining that under § 16-4602.02 (a)(1), it no longer had exclusive, continuing jurisdiction over custody matters regarding the children.

It undoubtedly is true, as we recognized in *Mitchell*, that "[a] party should not be permitted to use improper or unlawful means to . . . destroy the child's ties to the adversary's state, and then be heard to claim that the jurisdiction of the wrongdoing party's choice is the . . . appropriate one in which to litigate." 755 A.2d at 462 (quoting *In re B.B.R.*, 566 A.2d 1032, 1042 (D.C. 2000) (Schwelb, J., concurring)). In this case, however, the trial court found that the 2012 Custody

Order "does not specifically prohibit the [Father] from moving to another jurisdiction with the minor children" and that the Father "essentially has final decision[-]making authority" with respect to the children. Moreover, (1) the 2012 Custody Order contemplated that the parties might agree to modify the time-sharing schedule without court involvement (and the trial court did not resolve the Father's claim that the Mother *did* consent to the children's move to New York); (2) it was not until August 2014 that the Mother sought relief from the court, even though it is undisputed that the Father moved the children to New York in 2013; and (3) although the court, in ruling in 2014 on the Mother's "Emergency Motion," recognized that the 2012 Custody Order "remain[ed] in effect," the court nowhere stated that the Father had violated that custody order by taking the children to reside in New York and, to the contrary, appeared to acquiesce in the Father's "relocation with the children" (calling therefore for development of "an alternate schedule" for the Mother's visitation in light of it). The Mother did not seek reconsideration of that order or take an appeal from it. Moreover, in its March 3, 2016, ruling from the bench, the court referred to the Father's action in moving the children to New York as only "technically . . . not in compliance with the court order" and found that the Father's "behavior [was] sufficiently [a] good faith effort to try to comply with the order," remarking that it could not "fault" the Father for moving to New York for a job."

Although the trial court was correct that the custody order did not specifically prohibit the Father from moving to another jurisdiction with the children, we believe the order must be read as contemplating that the Father would not do so without court approval or the Mother's agreement. Thus, if the Mother did not in fact agree, we cannot condone the Father's unilateral action in removing the children in disregard of the 2012 Custody Order (even assuming that, as the Father alleges, the Mother had demonstrated little interest in visits with the children scheduled pursuant to that order). Nevertheless, on this record (and without a need to consider whether the court permissibly credited the Father's testimony at the March 3, 2016, hearing that he gave the Mother and the court notice of the planned move), we are unable to conclude that, by moving the children to New York, the Father used "improper or unlawful means" to destroy the children's connections to the District.[10] D.C. Code § 16-4602.02 (a)(1).

_____

[10] The Mother also requests that this court adopt a rule providing that:

> [P]arents subject to a custody order issued by the Superior Court *may not* under any circumstances move away from the District metropolitan area, at least where the relocation is likely to significantly impact the other parent's court-ordered visitation rights, without first asking for permission from the Superior Court or obtaining authorization in writing from the other parent.

(continued…)

Further, even if this case were not distinguishable from *Mitchell* on that factual basis, it would be distinguishable from *Mitchell* on the basis of a significant difference between the Uniform Child Custody Jurisdiction Act ("UCCJA"), D.C. Code § 16-4501 (1997) (repealed 2000), under which *Mitchell* was decided, *see* 755 A.2d at 459, and the UCCJEA, which pertains here. As we recognized in *Mitchell*, "in ruling on a claim of *forum non conveniens*," we were "expressly authorized by the UCCJA to consider whether 'the exercise of jurisdiction by the Superior Court would contravene any of the purposes stated in [D.C. Code §] 16-4501, or any of the provisions of the Parental Kidnapping Prevention Act of 1980[,] [28 U.S.C. § 1738A (1994) (the "PKPA")].'" *Id.* at 461 (citing D.C. Code § 16-4507 (c)(5) (1997)). Thus, under D.C. Code § 16-4501, in determining whether the family court was an inconvenient forum for continuing jurisdiction over the custody matter, the *Mitchell* court was authorized to consider whether the court's decision on jurisdiction would "deter abductions and other unilateral

---

(…continued)

Because the Father has not filed a brief (and we therefore have not been afforded the benefit of the adversarial process), and, in any event, because such a declaration is not necessary to the resolution of this case, we decline to adopt such a rule. For the same reasons, we decline the Mother's request that we "adopt as the law of the District Federal Rule of Evidence 902 (11)."

removals of children." *Mitchell*, 755 A.2d at 461 (alteration omitted) (quoting D.C. Code § 16-4501 (a)(5)).

Significantly for purposes of our analysis, the "inconvenient forum" provision of the UCCJEA, D.C. Code § 16-4602.07 (2012 Repl.), does not contain any reference to deterring abductions and unilateral removal of children or to the PKPA. Rather, it authorizes the court to determine, "upon motion of a party, the court's own motion, or request of another court," whether "a court of another state is a more appropriate forum" by considering, *inter alia*, as pertinent here, "[t]he length of time the child has resided outside the District" and "[t]he nature and location of the evidence." § 16-4602.07 (a), (b)(2), (b)(6), (c); *compare Mitchell*, 755 A.2d at 462 ("[T]he purpose of the UCCJA is to deter abductions and other unlawful conduct," and "the UCCJA should be construed with these considerations in mind." (alteration omitted) (quoting *In re B.B.R.*, 566 A.2d at 1042 (Schwelb, J., concurring))), *with In re J.R.*, 33 A.3d 397, 401 (D.C. 2011) (referring to "the overarching mission of the UCCJEA to . . . provid[e] highly elastic means for avoiding jurisdictional conflict").[11]   If the court determines that it is an

---

[11]   The UCCJEA's "overarching purpose [of] flexible alternatives for establishing jurisdiction," *In re J.R.*, 33 A.3d at 401, is also reflected in D.C. Code § 16-4602.08 (2012 Repl.), which, rather than declaring unconditionally that a court "shall decline to exercise its jurisdiction" where "a person seeking to invoke

(continued…)

inconvenient forum, "it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper." D.C. Code § 16-4602.07 (c).

In essence, the trial court's *sua sponte* decision to relinquish jurisdiction in this case was based on a determination that New York rather than the District is the appropriate forum in light of the children's years of residence there and the fact that evidence pertaining to their care, protection, training, and personal

---

(…continued)

its jurisdiction has engaged in unjustifiable conduct," authorizes the court to exercise jurisdiction if both parents acquiesce, a court of the state that would otherwise have jurisdiction "determines that the District is a more appropriate forum," or no other state would have jurisdiction. D.C. Code § 16-4602.08 (a)(1)–(3).

None of this is to suggest that the UCCJEA purports to authorize courts to overlook the federal mandate to deter parental kidnapping and unilateral removal reflected in the PKPA; quite the contrary, the drafters of the UCCJEA sought to "reconcile[] the jurisdictional provisions of the UCCJA with the PKPA." *Welch-Doden v. Roberts*, 42 P.3d 1166, 1173 (Ariz. Ct. App. 2002). It is only to say that the UCCJEA promotes a flexible approach toward resolving which court should exercise jurisdiction, permitting a focus on the situation as it currently exists, with the result that a parent's "unjustifiable conduct" in moving a child to another State is not necessarily fatal to that State's acceptance of jurisdiction over a custody matter.

relationships will primarily be found there.[12]  On the record before us, we can find no abuse of discretion in that determination, which was not manifestly unreasonable.  *Cf. Ostrom v. Gibson*, No. 43314-1-II, 2013 Wash. App. LEXIS 1766, at *4 (Ct. App. July 30, 2013) ("We review a trial court's decision to decline jurisdiction under the UCCJEA to determine whether that decision was manifestly unreasonable or based on untenable grounds.").  We are mindful that § 16-4602.07 (b) directs the court to "allow the parties to submit information" and to "consider all relevant factors, including" those listed in § 16-4602.07 (b)(1)–(8).[13]  Although

---

[12]  As noted *supra*, in its ruling the trial court did not refer specifically to the "inconvenient forum" section of the UCCJEA, § 16-4602.07.  However, as courts in some other UCCJEA jurisdictions have done, we have determined that we may uphold a trial court decision relinquishing jurisdiction to another State if "the record supports the conclusion that [the other State] is the more convenient forum" and the trial court "based its determination on the statutory factors used to determine whether a forum is inconvenient," even if the court did so without citing the UCCJEA inconvenient forum provision and without explicitly couching its analysis as an inconvenient-forum analysis.  *Matter of Jamilah DD. v Edwin EE.*, No. 522556, 2017 N.Y. App. Div. LEXIS 5706, *3-5 (N.Y. App. Div. July 20, 2017).

[13]  Those enumerated factors are:

> (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) The length of time the child has resided outside the District;
>
> (3) The distance between the court in the District and the

(continued…)

the court did not explicitly invite submissions pertinent to these factors, it heard

relevant evidence at the March 3, 2016, hearing on all but the court-related issues

(subparagraphs (3), (6), (7), and (8)).[14]  We also note that the Mother has not

_____

(…continued)

> court in the state that would assume jurisdiction;
>
> (4) The relative financial circumstances of the parties;
>
> (5) Any agreement of the parties as to which state should assume jurisdiction;
>
> (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
>
> (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
>
> (8) The familiarity of the court of each state with the facts and issues in the pending litigation.

D.C. Code § 16-4602.07 (b)(1)–(8); *see also* N.Y. Dom. Rel. § 76-f (2)(a)-(h).

[14]  The Official Comments to the Model UCCJEA's provision on "Inconvenient Forum" (§ 207) state that "[i]n applying subparagraph (3) ["[t]he distance between the court in the District and the court in the state that would assume jurisdiction"], courts should realize that distance concerns can be alleviated by applying the communication and cooperation provisions of [s]ections 111 and 112." Unif. Child Custody Jurisdiction & Enf't Act § 207 cmt., 9 U.L.A. 682 (1999). Section 111 (codified in our jurisdiction at D.C. Code § 16-4601.10 (2012 Repl.)) provides for "[t]aking [t]estimony [of the parties, the child(ren), and witnesses] in [a]nother [s]tate," including by telephone or other electronic means, and calls for cooperation "with courts of other [s]tates in designating an appropriate location for the deposition or testimony." Unif. Child Custody

(continued…)

argued that the court's decision to relinquish jurisdiction to New York was inappropriate on grounds other than the Father's alleged wrongful conduct in moving the children to that jurisdiction. We therefore uphold the court's ruling relinquishing jurisdiction over the custody orders, subject to the "condition that a child-custody proceeding be promptly commenced" in New York.[15] D.C. Code § 16-4602.07 (c).[16]

---

(…continued)

Jurisdiction and Enf't Act § 111, 9 U.L.A. 668 (1999). Section 112 (codified in our jurisdiction at D.C. Code § 16-4601.11 (2012 Repl.)) permits a court of another state to hold an evidentiary hearing and forward a certified copy of the transcript of the hearing to the court exercising jurisdiction over a custody matter. Unif. Child Custody Jurisdiction & Enf't Act § 112, 9 U.L.A. 669 (1999).

[15] Like the District, New York is a UCCJEA jurisdiction. *See Matter of Jamilah DD.*, 2017 N.Y. App. Div. LEXIS 5706 at *2 (noting that the UCCJEA is codified in New York Domestic Relations article 75-a). *See also Matter of Mojica v. Denson*, 991 N.Y.S.2d 443, 445 (N.Y. App. Div. 2014) (concluding that there was no need to remit the case to the Family Court for it to consider the statutory inconvenient-forum factors because the record was "sufficient for [the appellate court] to consider and evaluate those factors"); *Miller*, 52 A.3d at 61 (upholding trial court's decision relinquishing jurisdiction on the ground that Maryland was an inconvenient forum because the decision "reflect[ed] an understanding and appreciation of some of the relevant factors" contained in the UCCJEA inconvenient-forum provision and the decision "was not 'beyond the fringe'" of what could be deemed within the court's sound discretion).

[16] For the reasons described in section IV below, we vacate the court's rulings on the Mother's discovery-related and contempt motions. If no proceeding is opened in New York or if the New York court declines jurisdiction, the trial court is directed to rule on the merits of the Mother's discovery-related motions and, thereafter, to revisit its ruling on the Mother's contempt motion (taking into account any new information that might become available to the Mother through

(continued…)

**IV.**

The Mother argues that the trial court abused its discretion by failing to hold the Father in contempt of court for his failure to comply with the visitation and non-visitation provisions of the 2012 and 2014 Custody Orders and for failing to sanction the Father for discovery failures. At the close of the March 3, 2016, hearing, having stated that it could not "fault" the Father for moving to New York for a job, having found that "neither party . . . has the money to freely move back and forth between New York and D.C.," and acknowledging that it "f[ound] it difficult" to hold the Father in contempt, the court stated that it would not "find [the Father] in contempt at this time. The court made no findings during its ruling from the bench about the Father's compliance with the non-visitation provisions of the 2012 Custody Order or with the provisions of the 2014 Custody Order. In its subsequent March 14, 2016, written order, the court "conclude[d] as a matter of

---

(…continued)
any mandated discovery with respect to the Father's compliance with both the visitation and non-visitation aspects of the custody orders). *See* Unif. Child Custody Jurisdiction & Enf't Act § 207 cmt., 9 U.L.A. 682 (1999) (explaining that an appropriate condition of relinquishing jurisdiction "might include . . . resuming jurisdiction if a court of the other [s]tate refuses to take the case."). In advance of any such rulings, the Mother shall have an opportunity to file a motion requesting recusal of the trial judge.

law that the [Father] has failed to comply with the order of this Court regarding custody and visitation" and found that the Mother had shown "a prima facie case of contempt." Nevertheless, reasoning that the Father had "shown that he did not have the financial ability to fully comply with the court's order" and that the "custody order does not state specifically that [the Father] cannot move outside of the jurisdiction with the minor children," the court denied the Mother's motion for contempt. In its April 7, 2016, written order, the court denied as moot the Mother's motion to compel the Father to cooperate in discovery and denied the motion to sanction the Father for failing to attend his deposition and produce his cell phone for inspection.

As noted above, D.C. Code § 16-4602.07 (c) provides that if the court "determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper." The highest court in at least one other UCCJEA jurisdiction has construed the identical provision in its law to mean (1) that if there is a pending contempt motion and the court "declines to exercise jurisdiction [over custody], it should stay the motion for contempt," and (2) that the court errs if it instead denies the motion even though it

has relinquished jurisdiction. *See Watson v. Watson*, 724 N.W.2d 24, 35 (Neb. 2006).[17]

---

[17] *But see Ex parte Stouffer*, 214 So. 3d 1192, 1197–98 (Ala. Civ. App. 2016) (holding that the court could still enforce its own orders and judgments even after relinquishing jurisdiction to modify custody); *Heilig v. Heilig*, No. W2013-01232-COA-R3-CV, 2014 Tenn. App. LEXIS 116, at *11 (Ct. App. Feb. 28, 2014) ("We . . . find that the UCCJEA would not deprive the trial court of subject matter jurisdiction to enter the order finding Mother in contempt of its 2012 consent order [even though the court no longer had jurisdiction to modify the 2012 order]."); *Nelson v. Norys*, No. 2004-CA-001725-ME, 2005 Ky. App. Unpub. LEXIS 627, at *10–11 (Ct. App. July 29, 2005) ("[T]he order . . . is affirmed insofar as it relinquished jurisdiction over the pending motions to modify custody and visitation, but is reversed insofar as it declined to rule on the pending contempt motions. This case is remanded for further proceedings on the merits of any [pending] enforcement motions[.]"); *In re Marriage of Medill*, 40 P.3d 1087, 1096 (Or. Ct. App. 2002) ("The trial court's jurisdiction to hold mother in contempt for violations of the current parenting plan and to impose sanctions for those violations presents [issues] different [from the issue whether the court had continuing jurisdiction over custody].'").

The premise of the holding in *Watson* appears to be that the court accepting jurisdiction has jurisdiction over the custody order as if it (or a court within its jurisdictional district) had entered the order itself. We recognize that this represents a departure from what appears to be the general rule that a court is without power to hold a party in contempt of an order issued by a court in a different jurisdiction. *See Bedgood v. Cleland*, 554 F. Supp. 513, 517 (D. Minn. 1982) (citing the lack of authority "for the proposition that a federal district court may find a defendant in contempt of another court's order" and concluding that the Minnesota federal district court could not find a party in contempt of an order issued by the Maryland federal district court); *see also Leman v. Krantler-Arnold Hinge Last Co.*, 284 U.S. 448, 452 (1932) ("Disobedience constituted contempt of the court which rendered the decree[.]").

Following that precedent in applying § 16-4602.07 (c), we conclude as follows:  Because, by the conclusion of the March 3, 2016, hearing, the court had determined that it would relinquish jurisdiction and direct the parties to register the custody orders in Amsterdam, New York, the court should not have ruled on the pending contempt and discovery motions.  The court should instead have stayed any action on those motions (pending the opening of a proceeding in New York) and should have deferred to the New York court to hear and rule on any still-pending motions.  *Cf. TZ v. SZ*, 958 N.Y.S.2d 649, 649 (Sup. Ct. 2010) (concluding in a UCCJEA case that New York was an inconvenient forum, that California was a more appropriate forum, and directing that "[a]ll remaining issues concerning the children (custody and parental access) . . . be heard . . . in the Superior Court of California").  This result is consistent with the principle that civil contempt is a sanction designed to enforce compliance with an order rather than to punish the contemnor.  *See Loewinger v. Stokes*, 977 A.2d 901, 915 (D.C. 2009). Since (presumably) the New York court will determine how to modify or enforce the custody orders, it makes sense to let that court determine whether contempt sanctions are necessary to encourage compliance.

**V.**

For the foregoing reasons, we affirm the judgment of the trial court denying the motion for Rule 11 sanctions and, subject to the condition identified above, relinquishing jurisdiction over the custody orders and custody matters regarding the parties' minor children. We vacate the court's rulings denying the motion for contempt and denying as moot the Mother's discovery-related motions. We deny as moot the Mother's request for a remand and her request that we require assignment of a new trial judge, but direct that the Mother shall have an opportunity to move for recusal should no proceeding be maintained in New York and should the matter be returned to the Superior Court for further proceedings on the Mother's unresolved motions and other custody matters.[18]

*So ordered.*

---

[18]  *See* Unif. Child Custody Jurisdiction & Enf't Act § 207 cmt., 9 U.L.A. 682 (1999) (explaining that an appropriate condition of relinquishing jurisdiction "might include . . . resuming jurisdiction if a court of the other [s]tate refuses to take the case.").